THE CORPORATION OF THE CITY OF MARSHALL V. WILLIAM SNEDIKER AND ANOTHER.

Where the ordinances of a municipal corporation required a party to obtain a license before retailing spirituous liquors, and imposed a heavy penalty for their violation, a compliance therewith, by the payment of the sum required to obtain the license, will not preclude the party paying the same from testing the legality of the exaction, by suit to recover back the money.

The party upon whom such an ordinance operates, not standing upon an equal footing with the corporation, which may inflict upon him penalties or cause him to hazard ruinous losses by the certainty of litigation, is not upon an equal footing with the corporation; and consequently the rule which has been often held, that if a party pay money voluntarily in ignorance of law, but with a knowledge of all the facts, he cannot recover it back, would not be applicable to such a state of facts.

If the city council exceeded its authority in making the assessment of tax, (payable before procuring the license,) and demanded and received from the plaintiff more than the charter permitted, and it was paid under the pressure of the summary remedies prescribed for its collection, and of the heavy penalty for retailing without its payment, it was against good conscience to retain it; and that is an additional reason why the action for it can be maintained.

A municipal charter granted by the legislature, empowering the "city council to have and exercise the power of laying and levying taxes upon all subjects of taxation within the corporate limits upon which a tax may be levied by the State, as may be deemed necessary : provided, that the tax on property shall not in any one year exceed one half of one per cent. *ad valorem* on such property : provided, also, that such tax shall be apportioned in the same manner as the State tax," confers a general power of taxation limited by the provisions; the second of which requires the city council to follow the apportionment of occupation tax, as indicated by the will of the legislature in the assessment of State tax.

Where the assessment of corporation taxes upon occupations, under such a charter, discriminates against an occupation in a degree beyond that made on such occupation by the legislature in the collection of taxes for State and county purposes, it is unwarranted by the charter, and, if enforced, the money thus illegally exacted may be recovered back from the corporation by a party so injured.

The defendants not having appealed or taken out a writ of error to this court, it is not necessary to decide whether or not it should have been determined that the ordinance of the city council imposing this excessive tax was utterly void for want of authority to assess it in the manner it was done.

ERROR from Harrison.    Tried below before the Hon. C. A. Frazer.

This suit was brought by William Snediker and W. B. Cole, partners in trade under the name and style of Snediker & Cole, on the 24th day of August, 1858, against the corporation of the city of Marshall, to recover the sum of five hundred dollars, alleged and admitted by the defendant to have been paid by them, as a corporation tax imposed upon retailers of spirituous liquors; said tax being five hundred dollars per annum upon each retail establishment of spirituous liquors in quantities less than one quart, and said plaintiffs having paid, in compliance therewith, one hundred and twenty-five dollars every three months for the period of one year.

The petition alleges that said tax was imposed by the ordinance passed by the mayor and aldermen of the city on the 6th of May, 1857, imposing said tax for the privilege of retailing spirituous liquors within the corporate limits of said city for twelve months, and that petitioners paid said several sums as aforesaid under compulsion, from the 3rd day of September, 1857, for one year ensuing.

The petition also alleges that the tax, so imposed and collected out of them, is out of proportion to the taxes imposed upon other occupations and citizens of said city; that the same is exacted and forced out of them in violation of the laws and constitution of the State.    That a tavern, eating house and livery stable are taxed only fifteen dollars by said ordinance, and that most of those occupations and privileges are more valuable than that of retailing spirituous liquors.    The mayor and aldermen are made defendants, and the petition prays for judgment against said corporation for said sum of five hundred dollars.

The defendant filed as an answer a general demurrer, and a general denial.

A jury was waived and the cause submitted to the decision of the court, upon the agreement that the facts stated in the petition are true, and the following facts: That when said payments of the corporation license tax were made by the plaintiffs, they had a license from the County Court of Harrison county for which they

paid two hundred and fifty dollars for the privilege of retailing spirituous liquors for the space of twelve months. That the investments of plaintiffs in their business were about two thousand dollars annually; the profits on which have not exceeded one thousand dollars. That they pay the same *ad valorem* tax on their purchases for retail in their grocery store, and property, real and personal, which is exacted from other citizens. That the investments of capital in livery stables, hotels and public boarding houses, and in merchandize retailed in particular stores, is much greater,—from three to ten times greater than the capital invested in the business of the plaintiffs. That the ordinances affixed a penalty by fine of twenty-five dollars for each day that any person or firm who pursued an occupation upon which a corporation tax was levied, without having first paid the tax and obtained license according to the provisions of said ordinance, against all persons violating the same; and that the *ad valorem* tax on merchandize and on real and personal property, levied by the corporation, for the years 1857 and 1858, did not exceed that collected by the State.

The 8th section of the charter granted by the legislature of the State of Texas, passed January 30th, 1856, regulating the laying and levying of taxes by the city council of the city of Marshall, is copied in the opinion delivered by the court, omitting, however, the concluding paragraph, which is as follows: " And the city assessor and collector of taxes shall have the same power to enforce the collection of such taxes as may be imposed in said city, as the assessor and collector of each county has for the collection of State and county tax."

The court adjudged that the plaintiffs recover of the corporation of Marshall the sum of three hundred and fifty dollars and costs of suit.

The defendant removed the judgment to this court for review, and assigned as error:

1. That the court erred in its construction of the law as applicable to the facts.

2. That the judgment of the court was contrary to law and the evidence.

*W. P. Hill,* for plaintiffs in error.—The right or power of the corporation to assess and collect a license tax for retailing spirituous liquors within the limits of said city, is not questioned by the pleadings.

The charter of the city is dated January 30th, 1856, and the 8th sec. provides "that the city council of the city of Marshall shall have and exercise the power of laying and levying taxes upon all subjects of taxation within the corporate limits, upon which a tax may be levied by the State, as may be deemed necessary."

But the question made by the petition is, as to the mode in which the corporation has exercised this power; and the mode of its exercise is complained of in this, that the tax of $500 for retailing spirituous liquors " is out of proportion to the taxes imposed upon other occupations and citizens ;" that a tavern, livery stable, &c., are more valuable as occupations than the business of retailing spirituous liquors, but are taxed only $15."

If this principle of taxation is correct, then the whole system of license taxation is illegal, and the *ad valorem* rule must be applied to each occupation, and to each person's capital and profits in his occupation.

For the same reasons which make the ordinance of the city of Marshall illegal and void, will also make the act of the legislature of February 2d, 1856, imposing upon retailers the payment of $250 for license, void. The rule of proportion is violated, not only as between the occupation of retailing spirituous liquors and other occupations, but also as between the retailers themselves. Every retailer must pay $250 for his license, and yet one may have a capital invested of $1000, another of $2000, and a third one of $3000. Upon the principle invoked in the petition, the retailer whose capital is only $1000, may well complain that his license costs him as much as that of the retailer whose capital is $3000. Establish this rule, and *ex necessitate*, all the laws which impose license taxes, in gross, upon occupations, must be expunged from the statute book.

The question of the validity of the act of February 2d, 1856,

is fully recognized in the case of Cain v. The State, 20 Tex. Rep., 355.

In The State v. Swisher, 17 Tex. Rep., 441, this court in deciding the act of 1854, in regard to selling liquors without license, to be unconstitutional, never seem to have imagined that said act was vulnerable because it offended against the *ad valorem* principle.

But, if the legislature may assess a license tax in gross in behalf of the State, and may delegate this power to the corporation of any city or town; then, unless the legislature fixes a limitation to the exercise of the power by the corporation, how should it be limited? Certainly the most favorable view to the retailer, will be that the license tax must not amount to an absolute prohibition. This view of it I need not discuss, because, first, it is not pretended that the ordinance in question amounts to a prohibition; and the fact is, that the defendants in error were able to pay it, and did pay it; and second, they found it a most remunerative business, as is proven by the facts. They invested $2000; the license to the State and corporation was $750, and they paid a small *ad valorem* tax, making about $2,800 upon which they make a profit of $1000, or about 35 per cent. on their capital.

But, although the point is not made in the pleadings, it may be insisted that the provisions of the 8th sec. of the charter limit the exercise of the power of taxation by the corporation.

The first proviso is as follows: "Provided that the tax on property shall not, in any one year, exceed one-half of one per cent. *ad valorem* on such property."

"Provided also, that such tax shall be apportioned in the same manner as the State tax."

It is contended, that under the last proviso the corporation is compelled in levying the license tax upon occupations, to observe the same scale which the State has adopted.

For example and illustration: If the State assesses the license tax upon hotels at $50, and upon retailers at $250, then if the corporation shall levy a license of $25 on hotels, they must levy a tax of $125 on retailers.

This is an abandonment of the grounds of recovery in the

petition, but presents some difficulty of construction, and I suppose it to be the real ground of controversy.

To what does the second proviso refer? Does it not refer to the tax on property, as mentioned in the first proviso? The words "such tax," qualify the reference to some particular taxation before specified, and that is the tax on property. In the general enacting clause the words "laying and levying taxes," are used; this being plural and general, cannot be the antecedent of the words "such tax." "Such" is an adjective, and means "of that kind," or "of the like kind," and is used to refer to what has been specified, as distinguished from any previous general terms. The provisos might well read together, as follows:

"That the tax on property shall not in any one year exceed one-half of one per cent., *ad valorem*, on such property, and shall be apportioned in the same manner as the State tax."

This reading does no violence to the connection or construction of the sentences, and clearly shows that the apportionment applies only to the tax on property; that the per cent. (not exceeding one half,) shall be apportioned in the same manner as the State tax.

It is no answer to this that the State has fixed a uniform *ad valorem* tax of one and a half per cent on all property. The legislature may, at any time, break this uniformity and establish a per cent. scale. They may choose to discriminate by taxing one article of property one and a half per cent.; another, one per cent.; and another, one-half per cent.. If they do this, the corporation of Marshall must apportion its taxes on property to the same scale.

Taking the whole section (with the provisos) together, it is clear that it means this:

The city council may levy taxes on all subjects of taxation within the corporate limits, as may be deemed necessary; but in levying taxes upon property, two rules must be observed; first, not to exceed one-half per cent., *ad valorem ;* and second, to apportion them in the same manner as the State tax. And because this limitation as to the tax on property is made, the intent of the

30Y

legislature not to limit the city council as to other subjects of taxation, is clearly and strongly indicated.

This harmonizes with the meaning and effect of the 4th section of the charter, which provides "that the city council shall have full power to make and pass such by-laws and ordinances as they may deem necessary. * * * To regulate every thing relative to butchers, bakers, tavern-keepers, tippling houses," &c.

Consider the sections 4 and 8 together, and they clearly express the legislative will, that as to taxes on property there must be a maximum and mode prescribed, but that as to other subjects of taxation, and as to other matters affecting the municipal and social well being of the citizens of Marshall, they must be left to the discretion and judgment of the city council.

Property is a favorite of the law and must be protected, and not taxed beyond a certain limit. Even the retailer's property is thus protected, but his occupation has no claims upon the law or upon society. It is simply tolerated upon certain terms, because it cannot be suppressed, and must therefore be regulated. It is more a question of police and regulation than of revenue. The legislature says to the city council of Marshall: "This occupation of retailing spirituous liquors in quantities less than one quart, is permitted in your city upon two conditions; first, payment of $250 per annum to the State; and second, the payment of such taxes and conformity to such regulations as you may prescribe." The retailer knows these terms before he engages in the occupation. He pays the tax to the State and to the corporation, believing that the business will still leave him a wide margin of profit, or he would invest his capital otherwise.

And is it not just and right that the terms upon which the retailer shall vend his *poison*, shall be fixed by the community which is compelled to suffer its demoralizing effects? Can the retailer claim that his occupation shall stand upon the *ad valorem* principle with property, and with other occupations which are necessary to the administration and support of society, and which strengthen and adorn it?

The wisdom of the legislature is manifested in two ways, as applied to such cases. First, in proscribing the retail of spiritu-

City of Marshall v. Snediker.

ous liquors by the manner in which it deals with it as an occupation ; and second, because it refers to the local authorities to regulate and control it, as they may deem necessary.

No law is violated ; no wrong is done, because the complaining parties admit that they have made enormous profit upon a small investment.

There is another point upon which the plaintiffs in error confidently rely, to defeat this suit : " Money paid by one, with full knowledge (or the means of such knowledge) of all the circumstances, cannot be recovered back again on account of such payment having been made under an ignorance of the law." (Bilbie v. Lumley, 2 East., 469 ; Stelens v. Lynch, 12 East., 38 ; Knibbs v. Hale, 1 Esp., 84.)

This is universal, except in cases involving duress of goods, or of the person.

In Parker v. Great W. R. Co., 7 M. & G., 292, the plaintiff recovered money improperly paid to the R. Co. upon the grounds that every person had an equal right to send goods on the railway ; that it was the duty of the railway to transport the goods of all persons at the same established price of freight ; that the company refused to carry the plaintiff's goods unless he would pay a greater price than others were charged, and that having paid the excess over the customary price he was entitled to recover it back. Much stress was laid, too, upon the fact that the excess of the money was paid to the company to induce it to perform a duty which by law it was required to perform as a public duty. To the same effect is Close v. Phipps, 7 M. & G., 585, in which much emphasis is given to the fact that the money was paid under protest.

What is the case in the record ? There was a full knowledge of all the circumstances ; there was no duress of persons or of goods; no compulsion in any way whatever. The parties having knowledge of the ordinance of the city council, could pay the license or not, as they chose. If it was illegal, they are affected with notice of its illegality, and they could have proceeded to sell liquors under their license from the county court, and have successfully shielded themselves under the laws of the land against

all loss or damage.  But having knowledge (constructively, at least,) of its illegality, they voluntarily and deliberately proceed to pay the money, and find large profit in doing so.  The license was taken out quarterly, showing a voluntary and persistent acquiescence in the requirements of the ordinance for more than one year, each renewal of the license being a fresh and voluntary assent of the mind to the act.  The parties might have retired at the end of each quarter, as each license was for only three months.

They now come forward and say, in effect, we have done this thing voluntarily, but in ignorance of the law in this, that the corporation, as we are now advised, exceeded its powers in levying said license tax; and because of our ignorance of the law, we ask that our money be refunded to us.  The money was not paid under protest; they have had the full benefit of the protection of the municipal laws and organization, in the meantime; and no equity is shown in the petition.

I respectfully ask the reversal of the judgment and the dismissal of the case.

Supplemental brief of *W. P. Hill.*—That the legislature may confer upon cities, towns, &c., the right to levy taxes, &c., for municipal purposes and objects, see Stokes v. Corporation of N. Y., 14 Wend., 87; 2 McMullen, 233; Heisernbritle v. City of Charleston; State v. Clark, 8 Foster, N. H., 176; State v. Noyes, 10 Foster, N. H., 279; Sedg. Stat. & Const. Law, 463, *et seq.*

The State v. Clark, decides that a city may enact that no intoxicating liquors shall be kept or used in saloons, &c., within the city, for any purpose whatever; and this too, under its general power to pass ordinances to preserve the good order, safety and peace of society, &c.

In Heisernbritle v. City Council of Charleston, the same doctrine is discussed and applied, and for the same reasons.

I have said in my brief, that the legislature may make a per cent. scale of taxation—*i. e.* that all property of the *same kind* must be taxed uniformly, but that *different kinds* may be sub-

jected to a different per cent. of taxation. That is, *land* may be taxed at a certain per cent. and *slaves* at a different per cent. I know that this construction is mooted.

*P. Murrah*, for the defendants in error.*

Supplemental brief of *P. Murrah.*—A party that pays a railroad company more than the company has a right to charge in order to get the company to do service for him can recover the money back, for he pays under a sort of necessity. This is clearly decided in the case of Parker v. Great Western Railroad Company, 7 Manning & Granger, 292. One who has paid to the steward of a manor money for the production of deeds and court rolls at a trial, upon the principle that it was necessary for him to have them, and submitted to the exaction in consequence. If a sheriff who exacts fees beyond the law, he can be made to refund to the party paying it, because collected under color of law. (Dew v. Parsons, Chitty's R., 169; inside page 304, Best J. A case analogous in the facts and principles is found in 2 Barnwell & Creswell; Morgan v. Palmer, 729.) In this case money was recovered which had been exacted and paid to the mayor of Turmouth for the issuing of a license. In Irving v. Wilson, 4 Term R., 485, money was recovered which had been paid to an excise officer to recover goods, which the officer had seized and refused to deliver until the money was paid, (4 Term, 485; 4 Dunford & East.) This rule has been so liberally extended of late, that it will lie to recover money obtained by extortion, imposition, oppression, or taking an undue advantage of his situation. (Bates v. N. Y. Ins. Co., 3 J. Cases, 239; Ashley v. Reynolds, 2 Story 613.) Where a vessel was illegally seized and exactions imposed before the officers seizing it would release it, the money was recovered back. (Clinton v. Strong, 9 J. R. 370.) Money may be recovered from a collecter of customs who wrongfully exacts it as bondage duty. (Ripley v. Geltlen, 9 J. R., 301.) The cases

---

* The Reporter has not been furnished with Mr. Murrah's principal brief.—REP.

cited are conclusive of the position asserted. The cases cited are not so strong as the one at bar. In this case the defendant in error was compelled to pay what he did pay, or abandon a pursuit pronounced by the laws of Texas legitimate, and by the State taxed as legitimate. He was forced to pay by heavy penalties, and this is shown by the facts and by the agreement, a part of the statement of facts, that all the allegations in the petition are true.

ROBERTS, J.—It is contended that the payment of the license tax imposed by the city, was voluntarily made by the defendants, and that for that reason they cannot recover back the money so paid. It was collected off of the defendants under color of lawful authority, in pursuance to an ordinance of the city council; which enjoined its payment under a penalty of twenty-five dollars a day for every day its violation was continued by retailing spirituous liquors. The act of incorporation gave to the city assessor the same remedies for the collection of taxes imposed by the city as the assessor of each county has for the collection of State or county tax. This subjected the defendants' property to seizure and sale in a summary manner by the assessor. (O. & W. Dig., Art. 1987.)

Under these circumstances, the parties are not on equal terms. The ordinance of the city council required the defendants to obtain a license before retailing liquor, and imposed a heavy penalty for its violation. The defendants, by refusing to pay, would have placed themselves in the attitude of resisting the public authorities, and would have exposed themselves to the certain harrassment of litigation, and to the great hazard of ruinous loss, if they should fail in that resistance. It is not contended in this case, that the city council had no right to impose some occupation tax upon the defendants, but only that the tax of five hundred dollars was disproportioned to that imposed on other occupations, and was therefore excessive, unjust, and illegal. Still they had to pay the whole amount to get the license which was required by the city ordinance. It has often been held, that if a party pay money voluntarily, in ignorance of law, but with a knowledge of all the facts, he cannot recover it back. (Bilbie v. Lumley and others,

2 East, 469; contra, 7 Mass. R., 449; and see 1 Wend. R., 354–5.)

This rule cannot obtain, however, where the parties are not upon equal terms in the transaction. " If one party has the power of saying to the other '.that which you require shall not be done except upon the conditions which I choose to impose,' no person can contend that they stand upon any thing like an equal footing." Here the defendants were merely passive, and submitted to pay the sum claimed, as they could not otherwise procure the license required by the city ordinance. (Morgan v. Palmer, 2 Barn. and Cress., 319, 321.)

If, also, the city council exceeded its authority in making this assessment of tax, and demanded and received from the defendants more than the charter permitted, and it was paid under the pressure of the summary remedies prescribed for its collection, and of the heavy penalty for retailing without its payment, it was against good conscience to retain it; and that is an additional reason why the action for it can be maintained. (Brisbane v. Dacres, 5 Taunt., 90.)

The next important question in the case is, did the city council have the right to impose this license tax of five hundred dollars? It is not necessary to call in question the constitutional power of the Legislature of the State to invest a municipal corporation with the authority to levy and collect taxes, because we are of opinion that the charter did not authorize this assessment and collection. The facts show that the city council undertook to declare and enforce a public policy by discriminating against this occupation, in a degree far exceeding that of the Legislature, in the collection of taxes for State and county purposes. The State has indicated its policy in respect to the encouragement to be given to the various occupations liable to taxation, by apportioning the taxes upon each respectively. Retailers of spirituous liquors are required to pay annually two hundred and fifty dollars; those who keep a billiard table fifty dollars; an eating house sixteen dollars. The city council have not followed this apportionment, but imposed license tax on such retailers of liquor five hundred dollars; on billiard tables thirty dollars, and on eating houses fifteen dollars. Thus,

while a billiard table is taxed only three-fifths of what it is taxed by the State, a retail liquor establishment is taxed double.

The act of incorporation prescribes, "that the city council of the city of Marshall shall have and exercise the power of laying and levying taxes upon all subjects of taxation within the corporate limits, upon which a tax may be levied by the State, as may be deemed necessary; provided, that the tax on property shall not in any one year exceed one-half of one per cent. ad valorem on such property; provided, also, that such tax shall be apportioned in the same manner as the State tax."

The rule for the apportionment of taxes upon property is laid down by the constitution to be according to its value, except such property as two-thirds of both houses of the Legislature may think proper to exempt from taxation. The constitution leaves the apportionment of the taxable occupations entirely to the discretion of the Legislature. (O. & W. Dig., 25, sec. 27 Gen. Prov.)

The Legislature has exempted certain property from taxation, and has fixed the apportionment of taxes levied upon occupations. The object of the two provisos attached to the general power of taxation given to the corporation, are, first, to limit the tax on property not exempt, (which cannot be otherwise than ad valorem) at one-half of one per cent. per annum; and second, to require the city council to follow the apportionment of occupation tax as indicated by the will of the Legislature in the assessment of State tax. This is the natural construction, and gives greatest effect to all of the provisions of the section of the law in question. Indeed, if it be held that the second proviso refers alone to property tax, as contended for by counsel for plaintiffs, it can have no meaning or force whatever, unless perhaps in its application to exempted property. It would leave the city council with unlimited powers in levying and apportioning taxes on occupations. It might prescribe the public policy of the country within the city, at discretion, in building up one occupation by exemption, and in banishing another by the imposition of burthens in the shape of tax. The Legislature should not readily be supposed to have conferred such powers upon any inferior municipal authority, nor indeed would it be so

construed, except the language of the enactment plainly required it.

We think the meaning of the act plain, and well expressed, and that it requires the city council in assessing taxes on taxable occupations, to fix the same proportion between them as that fixed by the Legislature for the State tax, thereby following the policy adopted by the whole State, and not that dictated by their own discretion.   (See cases bearing on this matter, 1 Humph., 160, 241.)

Upon this view of the law, it is presumed the case was adjudicated below.    Whether or not it should have been determined that the ordinance of the city council imposing this excessive tax, was utterly void for want of authority to assess it in the manner it was done, need not now be decided, as the defendants have not appealed or taken a writ of error from the judgment of the court below.

Judgment affirmed.