POLSON *et al.* v. YOUNG *et al.*

1. **Attorney and client:** TRANSACTIONS BETWEEN. Transactions between attorney and client, as in all other cases where fiduciary relations exist, will be closely scrutinized by a court of equity, and when it appears that the client has been taken advantage of by the attorney through his influence and knowledge, the transaction will be set aside and the client protected by proper orders of the court.

2. —— Thus held in respect to a conveyance made by a client to his attorneys in part consideration of excessive fees.

*Appeal from Decatur District Court.*

WEDNESDAY, OCTOBER 8.

ACTION in chancery to set aside a deed for certain lands, executed by plaintiff to defendants in satisfaction of certain services rendered by defendants as attorneys, on the ground of fraud and undue influence used by defendants in procuring the conveyance. There was a decree of the court granting the relief

claimed by plaintiff, but, upon a cross-bill of defendants, a judgment was rendered against plaintiff for $847.43, which was declared to be a lien upon the lands in controversy. Plaintiff appeals. The facts of the case appear in the opinion.

*J. W. Penny* for the appellants.

*Warner & Post, J. S. Warner* and *John W. Harvey* for the appellee.

BECK, Ch. J. — A minor son of plaintiff's was arrested upon a charge of robbery, and taken before a magistrate for a preliminary examination. The father in some way was implicated in the charge, and was also arrested but discharged; the son was held to answer. Defendant Young appeared for the prisoners in their examination, being retained by the father, who gave his note for $100 for defending the son, and paid Young $50 in coin for the services rendered in his own behalf.

Two indictments were found against the son, one for robbery and the other for an assault with intent to commit murder, both charges being based upon the same acts. Upon a trial for the crime first named, he was defended by the defendants in this action and was acquitted. For their services the father executed to the defendants his note for $600, and retained them in the other case. Before the trial thereof, after considerable negotiation, wherein the defendants had pressed the father to secure the note given for their services in the first trial, and their fees to be earned in the second, it was finally arranged that the plaintiffs should convey the land in suit, which was an improved farm and occupied by them, to defendants on these conditions: The defendants were to appear for the son at the trial on the last-named indictment, and to discharge the $600 note held by them for services in the first case and executed their notes for $750, payable to the father; the plaintiffs were to convey the land to defendants. It was also agreed that, if the son was not acquitted, defendants should

pay plaintiffs $250 in addition to the amounts of their notes. The obligation of defendants to pay these several sums was to be secured by a mortgage on the land. This arrangement was carried out, and the deeds, notes and mortgage were executed accordingly. At the second trial the son was convicted and sentenced to eight years confinement in the penitentiary. The defendants went into possession of the farm and made improvements thereon of the value of $276, and received rents from plaintiff, William Polson, who occupied it as tenant, to the amount of $203.

The plaintiffs claim in their petition that the notes and deed of the land to defendants were procured by them through fraud and misrepresentation of the character and value of their services, and of their abilities and experience as attorneys, and by an improper exercise of influence over plaintiffs which they possessed on account of the relation of client and attorneys existing between the parties. They claim that defendants were incompetent as attorneys, and so mismanaged the last case against their son that conviction was the result ; that their whole services therein were valueless, and that for all their services rendered for plaintiff and his son, they are entitled to recover but a small sum, if any thing, over and above the amount paid them for the preliminary examination. They ask that the land be re-conveyed to them and that an acccount be taken of the transactions between the parties, and, if any thing be found due defendants, plaintiffs be permitted to pay it, and that the court decree accordingly. The defendants in an answer deny all allegations of the petitioners charging fraud, mismanagement and incompetency of the defendants, and by a cross-bill ask that their title to the land be quieted and for such proper relief as the nature of the case demands.

I. Transactions between attorney and client, as in all other cases where fiduciary relations exist between parties, one of whom possesses superior knowledge and ability and the other is subject to his influence, are regarded with a scrutinizing and jealous eye by courts of equity, and will be set aside and

the clients protected whenever advantage 'has been taken of them through the influence or knowledge of the attorneys, possessed by reason of their peculiar relations. Sales made, and conveyance in pursuance thereof, from clients to the attorneys, will be annulled unless shown to have originated in *uberrima fide*. *Harper* v. *Perry*, 28 Iowa, 57; 1 Story's Eq., § 313, *et seq.*; 3 Greenl. Ev., § 253; *McCormick* v. *Malone*, 5 Blackf. 509.

Under these principles we are satisfied that the conveyance to defendants ought to be set aside. The evidence satisfies us that the charges made for the services rendered were excessive, and that defendants took advantage of their relations toward plaintiffs and the peculiar condition of their minds, brought about by their fears for the safety of their son, to obtain the execution of the notes and deed, as well as the last contract under which the deed was made. It is shown in evidence that the popular feeling was greatly excited toward the son of plaintiffs, growing out of the atrocious nature of the crime, for the commission of which he was finally convicted. Defendants took advantage of this state of affairs to induce plaintiffs to enter into the several contracts. They cannot be sustained by a court of equity.

II. Without holding that defendants were culpably negligent, or that they exhibited any degree of incompetency in the management of the trial upon the indictment upon which the prisoner was convicted, we are satisfied by the evidence that $600 is a fair and reasonable compensation for their services in both cases. The amount paid for their services in the preliminary examinations, $150, was quite liberal, but not unreasonable.

It is shown that defendants expended in improvements upon the farm $73 more than they received for rent. They should be allowed that sum. These amounts, with interest, make about the sum allowed by the decree of the court below, viz.: $847.43. In our opinion this is the just amount, as nearly as we are able to determine, to which defendants are entitled. This the plaintiffs are required to pay, and proper decree

making that sum a lien on the lands in question, to be enforced by execution, will be entered here. This precisely accords with the decree of the district court. The defendants will pay the costs of the court below; the plaintiffs the costs of this appeal.

III. Counsel for plaintiffs claim that defendants can recover nothing in this proceeding for their services rendered for plaintiffs, inasmuch as they have not prayed for such relief in their cross-bill. In presenting this objection they overlook the fact that plaintiffs in their petition offer to pay the sum justly due defendants, and they do not remember a favorite maxim of equity, viz.: "He who seeks equity must do equity." Besides, the prayer of the cross-bill for general relief is sufficient to authorize a judgment for the amount found to be justly due defendants.

The judgment of the district court is

Affirmed.