DAVID DONALDSON, Appellant, v. EATON & ESTES.

**Champerty:** ANNULMENT OF MARRIAGE: PUBLIC POLICY. The contract of an attorney to procure the annulment of his client's marriage, and a settlement of the wife's alimony, in consideration of a stated sum of money and the conveyance of certain property is champertous and void; and is also against public policy.

**Attorney and client:** COMPENSATION: ILLEGAL CONTRACTS. The court will not protect the contract of an attorney for compensation in a lump sum, where there has not been a fair and full disclosure of the character of the service performed; and money or property unjustly obtained by an attorney by reason of his fiduciary relation, though voluntarily paid, will be restored to the client.

**Same:** BURDEN OF PROOF. The burden is upon an attorney to show that in any settlement for compensation, or of dealings with his client's property, he acted in good faith and disclosed all the facts.

**Excessive attorney fees:** RECOVERY OF SAME: PRIOR SETTLEMENT. Where an attorney by reason of his superior advantage has obtained from his client an unjust compensation, he may be required to return all in excess of a reasonable remuneration for his services, notwithstanding a prior settlement with his client made in ignorance of the facts.

*Appeal from Freemont District Court.*— HON. O. D. WHEELER, Judge.

SATURDAY, DECEMBER 14, 1907.

THIS proceeding to require defendants to refund to plaintiff $2,000 for extortionate fees exacted from him by defendants in excess of a reasonable compensation in their capacity as his attorneys was instituted in the lower court by motion, as authorized by Code, section 3826. After hearing the evidence the lower court dismissed plaintiff's action, and he appeals.— *Reversed.*

*W. P. Ferguson,* for appellant.

*W. E. Mitchell,* for appellee.

McCLAIN, J.— The evidence, without substantial conflict save as to one point to be hereafter noticed, shows that in November, 1904, the plaintiff, who was seventy years of age, a farmer and a resident of Freemont county, consulted defendants, as attorneys practicing in that county, with reference to difficulties and disagreements with his wife, to whom he had been married about eight months, and expressed to them the desire for a divorce from his wife in order that she might not have her statutory share of his property should she survive him. The defendants were not able to discover in plaintiff's statement any ground for divorce, and the subject, for the time being, was dismissed. About December 1st following, plaintiff consulted defendants again with reference to a threatened proceeding for an annulment of marriage on the part of the wife, in which he understood she would ask $10,000 as alimony, and the homestead consisting of a house and lot in town of the value of about $1,000. The member of defendant firm thus consulted expressed the belief that no more than $2,-000 would probably be allowed to the wife. In this conversation plaintiff disclosed to defendants that his wife had a cause for the annulment of marriage on the ground of his impotency, and expressed desire that she procure such annulment, saying that he was worth about $38,000, and that another person of larger means had settled with his wife for $5,000, and expressed a willingness to settle for that amount. On December 3d plaintiff, with one of the defendants, went to the town of plaintiff's residence, where his wife was occupying the homestead, and the attorney had a conversation with the wife, not in the presence of the plaintiff, with reference to the threatened legal proceedings. The attorney reported to the plaintiff that the wife was

claiming $10,000 and the homestead, and that she would not settle for less without consulting her attorney, who had already been sent for. The attorney arrived in the afternoon by train, a conference was held between the wife and her attorney on the one side and the attorney for the plaintiff on the other, plaintiff not being present, and an arrangement was made by which the wife was to bring the action, which was not to be resisted, and was to be allowed $1,200 and the homestead, by way of alimony, and the plaintiff in this action was to pay all costs and expenses, including the fees of the wife's attorney. These terms of settlement were embodied in a written stipulation entitled as in an action and in form an application to the court with reference to the disposition of the property rights and alimony of the plaintiff in case a decree should be granted, and was signed by the respective attorneys for their clients. The conference closed before 7 o'clock in the evening, and the wife's attorney departed on the train. According to the testimony of the member of defendant firm who carried on these negotiations for plaintiff, a written contract between the plaintiff and defendant had been drawn up by him and signed by plaintiff between these two interviews, stipulating as to the compensation to be paid defendants in the event of the successful termination of the proceedings for annulment of marriage, which was in the following terms:

This agreement made and entered into this 3rd day of Dec. 1904 by and between Eaton & Estes, Attys. of Sidney, Ia., and David Donaldson of Farragut, Iowa, Witnesseth:

That whereas David Donaldson desires a divorce from his wife, Henrietta Donaldson, and an adjustment of the matter of her alimony, at the earlist possible date, now.

The said David Donaldson, hereby agrees to pay to the said Eaton & Estes, the sum of Four Thousand Dollars and to convey to them or to whomsoever they order, his town property in Farragut, Freemont county, Iowa, consisting of one-half acre of land in Lot 51, Coy's Addition to said town

of Farragut, Ia., and the house and all other appurtenances thereunto belonging. The payment of said $4,000 and conveyance of said property are in consideration of Eaton & Estes securing for said David Donaldson a divorce from the bonds of matrimony, or of any services of said Eaton & Estes whereby a severing of the bonds of matrimony is secured as between the parties aforesaid, and settlement of all alimony and all claims of said Henrietta against the estate and property of said David Donaldson. It is expressly understood that said $4,000 and said property shall include and pay all costs of suit, attorney's fees and all other expenses whatever connected with said divorce proceeding and shall be paid and performed as soon as or upon the procurement of said divorce and settlement of alimony. Witness our hands on the day and date above written, at Farragut, Iowa.

Plaintiff testified that this contract was drawn up and signed in the evening after the conference between his attorney and the wife and her attorney at which the final terms of settlement were agreed upon. But we regard this conflict in the evidence as wholly immaterial. It appears from plaintiff's evidence, which is not contradicted, that after the negotiations of the afternoon his attorney desired that the contract or arrangement, whatever it may have been at that time, with reference to defendants' fees, be modified so as to provide for payment of $6,000 instead of $5,000 as contemplated in the written contract above set out, on account of the fact that the wife's attorney was asking so much. Three days later notice of a proceeding for annulment of marriage was served upon this plaintiff, in which it was stated that the wife asked $2,500 and the homestead by way of alimony. Plaintiff seems to have been surprised that the claim for alimony was so small, and demanded from defendants the written stipulation which had been entered into for by him, which demand was refused, but a copy of the stipulation was given to him, whereupon he notified defendants by letter that they were dismissed from the case, and consulted another

attorney.  The day before the convening of the term of court in January following, when the case according to the notice was to come on for disposition, plaintiff called upon defendants at their office with reference to the letter dismissing them from the case; arrangements were made by which defendants were to carry out their contract and have the marriage annulled as provided for in their stipulation, defendants consenting that the new attorney be recognized if compensated by the plaintiff; and on the second day of the term a decree was entered in accordance with the stipulation, save that plaintiff agreed to pay his wife $800 in lieu of conveying to her the homestead, so that the decree provided for alimony in the sum of $2,000 and the payment of all costs by the defendant.  Before the entry of this decree defendants insisted on a settlement with plaintiff under the written contract, and plaintiff gave them two checks for $2,000 each and one for $800, all to be held in escrow until the decree should be rendered, and thereafter they applied the proceeds of these checks in payment to the wife of $2,000 alimony, to her attorney of $300, in settlement of costs and expenses $29, and retained in balance $2,471 as their net compensation under the contract.

The contract between defendants and plaintiff with reference to the procurement of annulment of marriage by plaintiff's wife against him and the settlement of her alimony, involving a lump sum agreed by plaintiff to be paid to defendants in consideration of an annulment being granted and the alimony settled, as agreed, was illegal and void for two reasons:  First, it was a champertous contract; second, it was a contract against public policy for facilitating and bringing about a divorce.  As to the champerty there can be no question.  It was not a contract for a contingent fee, but one in which the defendants speculated as to the settlement which could be secured from the wife. This is on the theory that the written contract was entered

1. CHAMPERTY: annulment of marriage: public policy.

into, as testified by the member of defendant firm who made it, prior to the final stipulation for settlement entered into on the afternoon of December 3d. It is hardly necessary to cite authorities in support of the proposition that an attorney cannot lawfully make such a contract. *Boardman v. Thompson,* 25 Iowa, 487; *Adye v. Hanna,* 47 Iowa, 264; *Hyatt v. Burlington; C. R. & N. R. Co.,* 68 Iowa, 662; *Jewel v. Neidy,* 61 Iowa, 300.

That a contract with reference to procuring a divorce or to facilitate its procurement is void as against public policy is also well settled. *Barngrover v. Pettigrew,* 128 Iowa, 533. If a contract to promote a marriage, not between the parties to the prospective marriage, but between one of them and a stranger who undertakes to assist in bringing it about, is contrary to public policy, as was held in *Estate of Grobe,* 127 Iowa, 121, then certainly a contract with reference to the procurement of a divorce is equally invalid, and an attorney who engages in the business of divorce brokerage for his own profit and as a means of speculation goes wholly beyond the limits of the legitimate business of an attorney at law. *Barngrover v. Pettigrew, supra; Newman v. Freitas,* 129 Cal. 283 (61 Pac. 907, 50 L. R. A. 548); *Jordan v. Westerman,* 62 Mich. 170 (28 N. W. 826, 4 Am. St. Rep. 836).

If, in fact, the contract between the defendants and plaintiff was entered into after the member of defendant firm had concluded the negotiations for settlement, then it was void also on the ground that the terms of settlement had not been disclosed to plaintiff and defendants were not dealing fairly with him. That a contract between client and attorney will be disregarded by the courts if made without a fair and full disclosure of the facts on which it is predicated is too well settled to justify anything more than the mere citation of a few pertinent cases. *Shropshire v. Ryan,* 111 Iowa, 677; *Ryan v. Ashton,* 42 Iowa, 365;

**2. Attorney and client: compensation: illegal contracts.**

*Cassem v. Heustis,* 201 Ill. 208 (66 N. E. 283, 94 Am. St. Rep. 160); *Henry v. Raiman,* 25 Pa. 354 (64 Am. Dec. 703).

Counsel for the defendants do not, however, seriously question the invalidity of the contract made between them and the plaintiff with reference to the procurement of an annulment of marriage by the wife. Their contention is that plaintiff made a voluntary settlement with them under such contract, and that a payment voluntarily made cannot be recovered back. The soundness of this general proposition as applied to parties dealing with each other at arm's length may be fully conceded, and it is not necessary to refer to the many authorities cited by counsel in its support. It is equally well settled as between attorney and client or other persons between whom such confidential relations exist that the one is entitled to rely on the good faith of the other; a settlement, though voluntarily made, will be inquired into by the courts, and money or property procured by the attorney or person owing the duty to the other party to protect his interests will be restored to him if he has been imposed upon and injured by reason of the fiduciary relation. *Kisling v. Shaw,* 33 Cal. 425 (91 Am. Dec. 644); *Cunningham v. Jones,* 37 Kan. 477 (15 Pac. 572, 1 Am. St. Rep. 257); *Polson v. Young,* 37 Iowa, 196.

The burden is on the attorney to show that in any contract or settlement with his client or dealing with his client's property he has acted in fairness and good faith 3. SAME: burden with a disclosure of all the facts. *Prouty* of proof. *v. Bullard,* 77 Iowa, 42; *Miles v. Ervin,* 1 McCord, Ch. 542 (16 Am. Dec. 623).

An attorney who acts in bad faith and seeks to secure 4. EXCESSIVE his personal advantage to the prejudice of ATTORNEY FEES: recovery of his client may properly be denied any com-same: prior settlement. pensation for his services. *In re Skoll,* 78 Minn. 408 (81 N. W. 210).

A settlement is not voluntary where the parties are not

dealing on an equal footing.  *City of Marshall v. Snediker,*
25 Tex. 460 (78 Am. Dec. 534).  As this court has said
in *Polson v. Young, supra:* "Transactions between at-
torney and client, as in all other cases where fiduciary re-
lations exist between parties, one of whom possesses superior
knowledge and ability and the other is subject to his in-
fluence, are regarded with a scrutinizing and jealous eye
by the courts of equity, and will be set aside and the
clients protected whenever advantage has been taken of
them through influence or knowledge of the attorneys pos-
sessed by reason of their peculiar relations."  If the at-
torney is not to be allowed to procure his client's property in
an unfair transaction which is prejudicial to his client's
interest, then certainly he may be required to return to
his client any money exacted in settlement under an illegal
contract, the settlement being exacted by the attorney while
the relation of confidence continues to exist between them
and while the very matter is pending in court as to which
the relation has arisen, so long as it is within the power of
the attorney to say "that which you require shall not be
done except upon conditions which I choose to impose,"
the attorney and the client are not standing on an equal
footing.  *City of Marshall v. Snediker, supra.*  It is to
be borne in mind that the settlement between plaintiff and
defendants under which defendants exacted from plaintiff
$2,471 in excess of all disbursements under their contract
for simply negotiating the procurement of annulment of
marriage by plaintiff's wife from him and the determina-
tion of the amount of her alimony cannot be regarded as
otherwise than grossly excessive.  Nothing but a formal
trial was contemplated, for the ground of annulment was
mutually understood to be sufficient.  There had never
been any contest, save as to alimony, and this contest had
been fully adjusted before the settlement between plaintiff
and defendants.  The contract for compensation was ille-
gal, and the only right which defendants had was to be

paid the reasonable value of their services. When the settlement was made the decree had not yet been entered, and the defendants were in possession of the instrument controlling the allowance of alimony, so far as such allowance could be controlled by mutual agreement of the parties. Certainly such a settlement was not made between persons dealing at arm's length, but was on the other hand, between attorney and client in the very business with reference to which the employment had arisen, which business had not yet been completed. The view suggested by one of defendants in his testimony, that defendants' services were "worth just what [plaintiff] thought it was worth to get a separation from his wife," cannot be approved. The client, no matter how ignorant or unduly exercised he may be, may properly look to his attorney to furnish him the judgment and discretion which he lacks.

That plaintiff had by letter dismissed the defendants from the case and employed another attorney is of no significance, for the reason that the relation of client and attorney between plaintiff and defendants had been resumed by mutual consent before the case came on for disposal, and the other attorney was by consent of the defendants simply brought in to assist them in protecting plaintiff's interests as against his wife. There is no evidence that the other attorney was representing plaintiff in any controversy with the defendants in relation to the payment of their fees.

The trial court should have sustained plaintiff's motion and required the return by defendants to plaintiff of the amount asked, as having been paid in excess of a reasonable compensation.

The judgment of the trial court is therefore *reversed*.