**Isadore NADLER, Appellee,**

v.

**Albert H. TREPTOW and Elease Treptow,
Appellants.**

**No. 53354.**

Supreme Court of Iowa.

March 11, 1969.
Rehearing Denied May 6, 1969.

M. S. O'Brien, Oelwein, for appellants.

Peter Burk and Isadore Nadler, pro se,
Waterloo, for appellee.

SNELL, Justice.

This is an action at law for the collec-
tion of attorney fees. Defendants denied
the accuracy of the charges and counter-
claimed claiming plaintiff's services were
self-serving and not in the best interests of
his client. The trial court sitting as the
trier of the facts allowed a little less than
54% of plaintiff's claim against one de-

fendant and disallowed the counterclaim. Defendants appealed.

The judgment was against Elease Treptow only. She will be referred to as defendant.

■ The basic issues are factual. Our review is not de novo. Findings of fact in a law action are binding upon the appellate court if supported by substantial evidence. Citation of authority is not necessary. Rule 344(f)1, Rules of Civil Procedure.

■ Appellant's brief is not in strict compliance with rule 344(a) (3), Rules of Civil Procedure, in setting out errors relied on for reversal. The failure, however, is not as flagrant as in Broadston v. Jasper County Savings Bank, Inc., 244 Iowa 1161, 58 N.W.2d 309 cited by appellee in his motion to dismiss.

In the spirit of leniency referred to in that case we overrule the motion to dismiss.

Plaintiff's employment as attorney for defendant and the rendition of service is admitted. The challenge is to the extent of the services and the propriety of the charges made therefor.

Plaintiff is a practicing attorney. Defendant Elease Treptow during the time involved was the operator of a tavern and restaurant known as Elease's Lounge. The details and intricacies of her interest do not appear and are not important in this case on appeal. She had been in partnership with Victor Anderson, who apparently was also the contract purchaser of real estate. The real estate contract called for payments of $300 per month to the Pappas estate. Mr. Anderson died so two estates were then involved.

Defendant by contract bought the Anderson interest in the real estate contract and Elease's Lounge. Plaintiff acted as her attorney.

Defendant was unschooled in accounting and business reporting and employed plaintiff to supervise, keep books and co-sign checks.

Defendant had business, financial and personal troubles. Her installment payments were too high. Negotiations for reduction were unsuccessful. Lending agencies declined help. Defendant's husband sued for divorce, but the husband and wife were soon reconciled.

Plaintiff rendered many and various services for defendant ranging from purely legal work to keeping books done mostly by his secretary. Defendant knew plaintiff was charging for the work and made payments on account.

Defendant's obligations to the Anderson estate included the obligations to the Pappas estate. In trust for his children plaintiff bought the Pappas real estate. Title was clouded and delays ensued. Defendant had no money and does not claim that she could have bought the real estate, but she challenges the propriety of plaintiff's actions.

The trial court found:

"To the Court's satisfaction it was established by a preponderance of the evidence that Mr. Nadler's purchase of real estate in trust for his children subject to outstanding contracts was not against the interests of his clients; in fact if payments were reduced as a result of his purchase, it would be for her benefit. There is much testimony that Mr. Nadler, in his representation of Elease Treptow, was very concerned about her high payments and wanted to obtain a reduction in same. The evidence further shows a full disclosure of the facts to the Defendant Elease Treptow, and that Plaintiff acted in good faith, and as a practical matter the purchase could be for her benefit.

"From the evidence submitted the Court finds that the competent evidence in this case failed to disclose any violation of duty or any such transaction as would bring it within the condemnation of the law. * * * "

The trial court then quoted from Shakespeare, "Who steals my purse steals trash! * * *"

Attached to the decision was a copy of #12 Canons of Professional Ethics.

We will comment, infra, on professional ethics.

I. Plaintiff's petition was in two divisions. The first division claimed $1,653.20 as the unpaid balance on the general account. The second division claimed $200 for services in the divorce action.

A number of exhibits were offered and received. Defendant challenged the admissibility and probative value of plaintiff's books of account.

■ The rules governing the admission of written memoranda or records are procedural and considerable discretion is vested in the trial judge in determining admissibility. Section 622.28, Code of Iowa. Bingham v. Blunk, 253 Iowa 1391, 116 N.W.2d 447, Moffitt Building Co. v. United States Lumber & Supply Co., 255 Iowa 765, 124 N.W.2d 134.

The trial court found there were some discrepancies in plaintiff's records. Some of the items were general rather than specific and it was difficult to determine what part were legal services, what part were clerical and what were bookkeeping services. The court gave great weight to the testimony of a witness for defendant and to the testimony of defendant that before submitting an itemized statement plaintiff told defendant she owed him $1,000. The court subjected plaintiff's claim to a substantial discount and rendered judgment in the sum of $1,000.

■ We cannot say that the court's findings and conclusions were without support in the evidence. We find no reversible error.

II. As noted, supra, the trial court appended to the decision a copy of Canon 12 of the American Bar Association Canons of Professional Ethics. These Canons of Professional Ethics have been adopted by our court. See court rule 119, page 3014, Code of Iowa. They have also been adopted by the Iowa State Bar Association. The Canons of Professional Ethics having been injected into the case we comment thereon.

Canon 12 considers the several matters to be considered in fixing fees including the poverty of the client. The entire thrust of the canon is that the fees should be fair and reasonable under all the circumstances. The last paragraph is as follows:

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

There was some conflict in the testimony as to the time and extent of disclosure to defendant concerning plaintiff's negotiations for the purchase of the Pappas property. The court found specifically that "The evidence further shows a full disclosure of the facts to the Defendant Elease Treptow, and that plaintiff acted in good faith, and as a practical matter the purchase could be for her benefit."

■ We agree with the trial court that defendant was not damaged by plaintiff's purchase. She had no money with which to buy. However, neither that fact nor good faith alone justifies the purchase by an attorney of property that is the subject matter of his client's litigation. It is only the finding of full disclosure that saves the transaction from censure.

Canon 10 of the Canons of Professional Ethics provides:

"Acquiring Interest in Litigation. The lawyer should not purchase any interest in the subject-matter of the litigation which he is conducting."

Canon 11 provides:

"Dealing With Trust Property. The lawyer should refrain from any action whereby for his personal benefit or gain

he abuses or takes advantage of the confidence reposed in him by his client. * * *"

7 Am.Jur.2d, Attorneys at Law, section 154, page 139, says:

"An attorney owes to his client an undivided allegiance, and after he has been retained by, and received the confidence of, a client, he cannot, without the free and intelligent consent of his client, given after full knowledge of all the facts and circumstances, act both for his client and for one whose interest is adverse to or conflicting with that of his client in the same general matter. It makes no difference how slight the adverse interest may be. And the fact that the motive and intention of the attorney are honest is immaterial. * * *"

Section 160, page 142, says:

"An attorney cannot deal for himself in the subject matter of the litigation to the prejudice of his client's interest. Without his client's consent, he cannot buy and hold, otherwise than in trust, any adverse title or interest touching the thing to which his employment relates. * * *

"The rule that prohibits an attorney employed to sustain a client's rights or title to property from purchasing any outstanding or opposing title against the interest of his client applies both before and after the cause is ended, and during the time the client holds for himself and after he has conveyed his interest. * * *"

█ Attorneys must not only abide by the letter and spirit of the rules but also scrupulously avoid actions that might lead to suspicion and discredit of himself and his profession.

For the reasons stated, supra, the case is

Affirmed.

GARFIELD, C. J., and LARSON, MOORE and STUART, JJ., concur.

BECKER, MASON, RAWLINGS and LeGRAND, JJ., dissent.

BECKER, Justice.

I reluctantly dissent.

Both the municipal court and the majority opinion completely ignore the fiduciary relationship of this plaintiff to defendant, his client. This court quotes (and apparently approves) the trial court's findings. Attached to the decision was a copy of rule No. 12, Canons of Professional Ethics.

The trial court might better have appended a copy of rule No. 10 and first paragraph of rule No. 11 of the Canons:[1] "10. Acquiring Interest in Litigation. The lawyer should not purchase any interest in the subject-matter of the litigation which he is conducting.

"11. Dealing with Trust Property. The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client."

After looking at those canons we might well consult some of our earlier cases. Donaldson v. Eaton & Estes, 136 Iowa 650, 656, 657, 658, 114 N.W. 19, 14 L.R.A.,N.S., 1168 states: "The burden is on the attorney to show that in any contract or settlement with his client or dealing with his client's property he has acted in fairness and good faith with a disclosure of all the facts. * * * The client, no matter how ignorant or unduly exercised he may be, may properly look to his attorney to furnish him the judgment and discretion which he lacks." (loc. cit. 136 Iowa pages 656, 658, 114 N.W. page 22.)

"An attorney who acts in bad faith and seeks to secure his personal advantage to the prejudice of his client may properly be denied any compensation for his services." (loc. cit. 136 Iowa at page 656, 114 N.W. at page 21.)

---

1. The Canons have been adopted by this court, Court Rule 119, page 3014, Code of Iowa, 1966.

Healy v. Gray, 184 Iowa 111, 118 to 121, 168 N.W. 222 states: " 'Transactions between attorney and client, as in all other cases where fiduciary relations exist between parties, one of whom possesses superior knowledge and ability and the other is subject to his influence, are regarded with a scrutinizing and jealous eye by courts of equity, and will be set aside and the clients protected whenever advantage has been taken of them through the influence or knowledge of the attorneys, possessed by reason of their peculiar relations. * * *.

" 'It can be safely stated, as a sound and salutary legal principle, that, so long as the relationship of client and attorney exists, the attorney is a trustee for his client in and about the cause or the subject thereof; and any trade that he makes or benefits he may derive, resulting from the litigation or a sale of the subject of the litigation, will inure to the benefit of the client [the *cestui que trust*]. This is a rule so wholesome and just that citation of authority is needless, and it would be difficult to find an authority holding to the contrary.'

" * * *. It is also a general rule that an attorney will not be permitted to make use of knowledge, or information, acquired by him through his professional relations with his client, or in the conduct of his client's business to his own advantage or profit. (cases cited.)

"The duty of an attorney to his clients is one of great delicacy and responsibility and sometimes of apparent hardship. Every consideration of personal advantage or profit must be subordinated to the interest and welfare of the client, and information derived from the close and intimate relationship necessarily existing should not be used to promote personal interests or for personal gain. (loc. cit. 184 Iowa at pages 118–119, 168 N.W. at page 225.)

" * * *. The law does not permit members of the legal profession to thus deal with the property of their client, or property in which some interest is asserted by them, and which may become the subject of litigation or to employ or use information derived from clients during the course of their employment, relating to the subject-matter thereof, to their own advantage." (loc. cit. 184 Iowa at page 121, 168 N.W. at page 226.)

The following cases also bear on the skeptical scrutiny with which the courts view an attorney's dealing with his client's property: In re Estate of Rorem, 245 Iowa 1125, 1140, 1141, 66 N.W.2d 292, 47 A.L.R. 2d 1089; Lawrence v. Tschirgi, 244 Iowa 386, 389, 57 N.W.2d 46; Reeder v. Lund, 213 Iowa 300, 310, 236 N.W. 40; Whitcomb v. Collier, 133 Iowa 303, 110 N.W. 836; State v. Halstead, 73 Iowa 376, 35 N.W. 457. See also In re Estate of Ankeny, 238 Iowa 754, 28 N.W.2d 414; Guttenfelder v. Iebsen, 230 Iowa 1080, 300 N.W. 299; Graham v. Courtright, 180 Iowa 394, 161 N. W. 774.

The foregoing quotations are from the older cases, perhaps because later writers saw no need to repeat the obvious. For later cases from other jurisdictions see Van Orman v. Nelson, 78 N.M. 11, 427 P.2d 896, 907, 908 (1967) where the court said: "We feel it appropriate here to state the well established rules which define the duties of an attorney in dealing with his client. The relationship has always been considered and treated as one of trust and confidence and consequently the law requires that the acts and conduct of the attorney in transactions with his client be characterized by absolute fairness, good faith and honesty.

"Contracts between client and attorney will be closely scrutinized by the courts and when a client challenges the fairness of such contract the attorney has the burden of showing not only that he used no undue influence but that in every particular he acted honestly and in good faith." See also Trafton v. Youngblood, Cal., 69 Cal.Rptr. 568, 442 P.2d 648, 654–657; In re Estate of Morentin, 86 Ill.App.2d 269, 230 N.E.2d 53; McIntosh v. Fixel, 297 Mich. 331, 297 N.W. 512.

This dissent is not based on a judgment Mr. Nadler did anything wrong. It is based on a judgment that he failed to show his actions were fair, above board, fully disclosed and not inimical to his client's interest. This is the crucial test. Plaintff did not meet it.

If we treat this case as just another case between evenly matched but misguided litigants, we can find enough in this sorry record to support the trial court's conclusion. But this isn't just another contest between individuals who dealt at arm's length. It is a controversy between a lawyer and his client in which the lawyer injected his own financial fortunes into those of his client.

No effort will be made to analyze all of the evidence. Enough should be said to indicate plaintiff did not carry his burden to show fair dealing.

Plaintiff paid $4000 down to buy the building his client was trying to acquire. *He took title in his own name.* He now says he holds title in trust for his children. This makes little difference insofar as plaintiff's duty to show his good faith is concerned. The point is that even in this area the record is inconsistent with plaintiff's declarations.

No evidence is produced to show this purchase did not have an adverse effect on defendant's operation. The trial court found: "To the Court's satisfaction it was established by a preponderance of the evidence that Mr. Nadler's purchase of real estate in trust for his children subject to outstanding contracts was not against the interests of his clients; in fact if payments were reduced as a result of his purchase, it would be for her benefit. There is much testimony that Mr. Nadler, in his representation of Elease Treptow, was very concerned about her high payments and wanted to obtain a reduction in same. The evidence further shows a full disclosure of the facts to the Defendant Elease Treptow, and that Plaintiff acted in good faith, and as a prac-

tical matter the purchase could be for her benefit."

Were defendant's payments reduced? The court doesn't so find nor does the record so show. How did acquisition of this property help defendant? Nothing in the record gives us a clue. How did it help Mr. Nadler (or his children)? He bought the asset at an immediate $800 reduction in price because the "problem was complicated". Presumably he was familiar with all the complications. This familiarity was gained while representing defendant; performing services for which he now seeks to collect.

What was the situation at time of trial? All we know is defendant still owns Elease's Lounge. It is now managed for her by someone else. Defendant claims plaintiff tried to buy her out for $1000 for a man named Taylor. Plaintiff denies trying to buy defendant out but says nothing about whether Taylor tried to do so or about plaintiff's role if Taylor did make such an offer.

Not once did plaintiff clearly show just when and under what circumstances he advised defendant he was going to become her creditor-contract vendor.

The above tests are harsh. They must be harsh. This is the only way to preserve fair dealing in the confidential-fiduciary relationship between lawyer and client.

If a lawyer is tempted to take a "flyer" into the economic affairs of his client he must know and be prepared to meet the stringent burden to show his good faith. In this case I would hold plaintiff did not do so. He did not prove his case and he cannot recover. I would further hold defendant did not prove her counterclaim and she cannot recover. Both actions should be dismissed with costs assessed equally against the parties.

MASON, RAWLINGS and LeGRAND, JJ., join in this dissent.