BERT HARRIS, Appellant, v. BARNES CITY SAVINGS BANK et al., Appellees.

**TRIAL: Taking Case from Jury—Directed Verdict on Conflicting Evidence.** Manifestly, there cannot properly be a directed verdict in the face of a flat conflict of testimony on material issues. So held where the issue at law was whether an absolute conveyance was given as a mortgage.

**MORTGAGES: Deed as Mortgage—Sale by Mortgagee.** A mortgagee who holds his security in the form of an absolute conveyance, and sells the property without the mortgagor's consent, is liable to the mortgagor for the difference between the fair value of the property at the time of the sale and the amount of the secured debt.

**MORTGAGES: Absolute Deed As Security—Effect of Concession.** A concession by a mortgagee that an absolute deed held by him was originally given as security opens the door to a court of law to entertain an action by the mortgagor for damages for a sale without the consent of the mortgagor.

*Appeal from Mahaska District Court.*—D. W. HAMILTON, Judge.

JUNE 23, 1922.

REHEARING DENIED SEPTEMBER 30, 1922.

ACTION at law, to recover damages for fraud and breach of contract. The material facts are stated in the opinion. There was a judgment on directed verdict for defendants, and the plaintiff appeals.—*Reversed and remanded.*

*S. V. Reynolds, A. J. Walsmith,* and *McCoy & McCoy,* for appellant.

*Irving C. Johnson,* for appellees.

WEAVER, J.—On July 13, 1914, the plaintiff executed and delivered to the defendant bank a warranty deed for a certain farm of 154 acres owned by the grantor in Mahaska County. The expressed consideration for such convey-

1. TRIAL: directed verdict on conflicting evidence.

ance was $1.00; but it is conceded of record that the real purpose and intent of the transaction was to secure payment to the bank of an indebtedness of about $4,000 to $5,000, subject, however, to prior mortgage liens of $26,000 and interest. The defendant Williams was cashier of the defendant bank, and as such represented it in its transactions with the plaintiff. On June 29, 1917, plaintiff made and delivered to the bank a quitclaim deed of ''all his right, title, and interest in and to'' said real estate. At the same time, and as part of the same transaction, the parties also made and signed a writing reading as follows:

''Oskaloosa, Iowa, June 29th, 1917.

''This memorandum: Witnesseth, that a complete settlement of all accounts has this day been made by and between the Barnes City Savings Bank of Barnes City, Iowa, and Bert Harris, of Oskaloosa, Iowa; and each party does acknowledge full settlement of all amounts and claims due from the other to this date. This includes all claims and accounts of whatever nature that either party has had up to this date. (Signed on the date above given.)

''Barnes City Savings Bank.
''Bert Harris.''

Thereafter, on May 10, 1919, the bank sold and conveyed the land in question to one David Lester for $210 per acre, or an aggregate price of $32,340, an amount substantially equal to the sum of the mortgage liens on the property. Some months later, this action was begun.

Plaintiff's amended and substituted petition was stated in two counts. By the first count, it is alleged that the defendants conspired together to cheat and defraud the plaintiff, and that, in pursuance of said wrongful purpose, defendant Williams stated and represented to plaintiff that, if he would secure the payment of his indebtedness to the bank by a warranty deed of his farm, the bank would receive it as security only, and would withhold it from record; and that, relying upon said promise, plaintiff did make and deliver the deed; but that defendants, in violation of their promises, and with intent to cheat and defraud him, caused the instrument to be recorded. It is further alleged that defendants thereafter assured the plaintiff that the recording of the paper had been made necessary, to satisfy the demand of the bank examiner, and that the bank would continue to hold the title as security only, in accordance with the original agreement; that thereafter, defendants, on the same plea of satisfying the demands of the bank examiner, asked plaintiff to execute the quitclaim deed; and that plaintiff complied with the request, upon the express understanding and agreement that the title should still be held by the bank as security only for the payment of plaintiff's indebtedness to it; but that, in violation of such agreement, and to cheat and defraud the plaintiff out of his equity in the land, the bank sold and conveyed it to Lester, a family relative of the owners of the bank, at a price below its actual value.

Plaintiff further alleges that, by reason of the wrongful and fraudulent acts so stated, he has been damaged in the sum of $23,000, for which he demands judgment. The second count of the petition restates the alleged facts set up in the first count, omitting therefrom the charges of fraud and conspiracy, and demands recovery of damages for violation of the alleged contract by which the defendants agreed to hold the title to the land in trust, for security only.

The defendants do not deny that the conveyance by war-

ranty deed was for security only, but allege that, plaintiff having failed to pay the debt so secured, and the bank being about to foreclose its lien, the parties entered into an agreement of compromise and settlement, by which plaintiff should quitclaim the land to the bank, thereby vesting the latter with the absolute ownership of the property, and the bank should cancel and release all its claims and demands against the plaintiff; and that, in performance of such agreement, plaintiff made and delivered said quitclaim to the bank, and the bank canceled all its claims against the plaintiff and surrendered to him the notes which had evidenced his said indebtedness. These allegations are denied by the plaintiff.

The issues were tried to a jury, and when the testimony had been closed, the court sustained defendants' motion for a directed verdict in their favor. From this ruling and from the judgment entered on the verdict, the plaintiff appeals.

I. The action being at law, it is the first complaint of the appellant that the issues of fact were for the jury, and that the court erred in directing a verdict for the defendant.

We are of the opinion that this assignment of error is well made, and that the court erred in directing a verdict. The action is at law, for the recovery of damages. It being conceded that the original conveyance was given and received as a mortgage only, its character as such is fixed, for the purposes of this case, and is not to be given any other effect, as between the parties, than would be accorded to it had it been executed in the usual form of a mortgage in fact. As to the quitclaim deed and the accompanying receipt or statement afterwards made, it is plaintiff's claim that they were executed and delivered on the same terms and for the same purpose for which the warranty deed was given,—that is, for security only,—the bank agreeing to hold the title in trust for the plaintiff, subject to its security for payment of plaintiff's indebtedness. The bank denies that this last conveyance was in trust or as security, and avers that it was received in payment and discharge of the said indebtedness, and that, in pursuance of such agreement, the bank did, in fact, cancel and discharge its claims against plaintiff and returned to him the promissory notes which he had given to evidence such debt. This the plaintiff expressly denies, and upon

the trial, the parties have each offered competent evidence in support of their conflicting claims. There is thus presented an irreconcilable conflict of evidence upon some of the vital fact issues, on which the plaintiff was entitled to go to the jury. Were this an equitable action to redeem, the plaintiff would have been allowed to show, if he could, that the quitclaim deed and receipt, made on June 29, 1917, were not intended as an absolute conveyance, but were made and delivered simply to strengthen and protect the bank's security and enable it to comply with the requirements of the banking department of the state government, and subject thereto, to preserve the property in plaintiff, subject to such security. Courts of law, as well as equity, have always been disposed to scrutinize dealings between mortgagor and mortgagee by which the latter acquires the title to the mortgaged property without foreclosure, or without new and adequate consideration; and it is in recognition of that policy that the rule arises by which a deed formal and regular upon its face may be shown to be, in fact, a mortgage. See *Fort v. Colby,* 165 Iowa 95, and authorities cited on pages 128, 129; and see, also, *Grannis v. Hitchcock,* 118 Minn. 462 (137 N. W. 186). It is unnecessary for us to extend this opinion to incorporate a statement of the testimony. It is enough to say that, if the showing made by the plaintiff is credited by the jury, a verdict in his favor could not be set aside as lacking support in the evidence. So, on the other hand, if the showing made by the defense is found to be the more credible, a verdict in its favor will follow. The fact issues should have been submitted to the jury.

II. It is the contention of the appellees that, even if the issue as to the real nature and purpose of the conveyances to the bank should have gone to the jury, the error, if any, was without prejudice, because there was no evidence

2. MORTGAGES: deed as mortgage: sale by mortgagee.

that plaintiff suffered recoverable damages by the sale of the land in violation of the alleged agreement to hold it as security. Such, we think, is not the state of the record. If the bank took and held the title as security only, and in violation of the contract or trust, sold it to a third person, plaintiff would be entitled to recover as damages the reasonable value of the land at the date of the conveyance,

less the aggregate amount of his debts, secured by liens thereon. *Colgan v. Farmers' & M. Bank,* 69 Ore. 357 (138 Pac. 1070); *Boothe v. Ficst,* 80 Tex. 141 (15 S. W. 799). The appellee bank alleges in its answer that, when it took the quitclaim deed, plaintiff's indebtedness to it was "about" $5,000, and that the prior mortgage liens on the property amounted to $26,775.41; that the value of the land did not exceed the aggregate amount of the sums named; and that it sold the property to Lester for $32,340. On his part, plaintiff alleges that the property was then fairly worth $23,500 over and above the indebtedness existing against it, and demands recovery in that amount. Several different witnesses for plaintiff testify to their knowledge of the land and to its market value, and estimate such value at from $280 to $325 per acre at the date of its conveyance by the bank to Lester. Defendants' witnesses on that subject place the value of the property on the date named at from $200 to $225 per acre. In other words, if plaintiff's estimate be sustained, there was a large margin of value in the land in excess of all the claims against it, including the claim of the bank; but if defendants' estimate be upheld, the margin of profit for the bank in the alleged settlement was comparatively negligible. The truth as to the fair value of the property is important, not only as relating to the measure of plaintiff's recovery, if any, but also for its bearing upon the question whether the quitclaim deed was given as security or as consideration for a discharge and release of the plaintiff's debt to the bank. The authorities are numerous to the effect that, if the property conveyed by a mortgagor to a mortgagee is largely in excess of the mortgage debt, proof of the fact is competent evidence tending to sustain the claim that the conveyance was given as security. *Wilson v. Patrick,* 34 Iowa 362; *Caldwell v. Meltveldt,* 93 Iowa 734; *Russell v. Southard,* 12 How. (U. S.) *139; *Schmidt v. Barclay,* 161 Mich. 1, 12; *Husheon v. Husheon,* 71 Cal. 407, 412 (12 Pac. 410); *Whitcomb v. Sutherland,* 18 Ill. 578. If the jury shall find for the plaintiff, that the quitclaim deed and receipt were given simply to perpetuate the bank's security afforded by the warranty deed for the payment of its claim, and not as an absolute conveyance of the property in the final payment and discharge of his debt, then the evidence as to the value of the land

at the time the bank conveyed it to Lester, together with the admitted amount of the indebtedness chargeable against such lands, affords sufficient basis for the assessment of plaintiff's damages, if any he has suffered, by reason of the alleged wrongful conveyance.

III. It must not be understood that it was not competent for the parties to settle their differences in the manner alleged by the defendants; or that plaintiff could not, by his quitclaim deed, vest the bank with a good title to the land, in consideration of the release and discharge of his indebtedness. In its final analysis, the simple question here presented is whether such settlement was made, and whether the title was conveyed for that purpose and with that intent. That question is one of fact, upon which there is a radical conflict of evidence; and its determination, we repeat, is for the jury. See *Wolfe v. McMillan,* 117 Ind. 587 (20 N. E. 509).

IV. Were the real character and purpose of the original conveyance a matter of dispute, plaintiff would, perhaps, be required to invoke the equity powers of the court to have the

3. MORTGAGES: warranty deed declared a mortgage; but it be-
absolute deed as ing admitted at the outset that it was, in fact,
security: effect
of concession. given and received as a mortgage, there appears to be no sufficient reason why a court of law may not entertain jurisdiction of the debtor's claim for damages he has suffered, if any, by reason of the bank's alleged conveyance of the title to a stranger, without his consent. In such actions, it is, of course, allowable for the mortgagee to allege and show, if he be able to do so, that, since taking such security, he has in good faith acquired the title by good and sufficient conveyance from the mortgagor. The quitclaim deed and the receipt doubtless make a prima-facie good defense to plaintiff's claim, but we think that, for the reasons stated, these instruments are not conclusive.

V. The appellant assigns other errors upon certain rulings of the trial court in the admission and rejection of offered evidence. So far as the questions so raised are not governed by the conclusions already announced, they will not necessarily arise upon another trial, and we pass them without discussion,

except to say that we discover nothing in them upon which to predicate a finding of prejudicial error.

For the reasons stated, the judgment of the district court is reversed, and the cause will be remanded for new trial.— *Reversed and remanded.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.