RAY GUTTENFELDER et al., Appellants, v. GEORGE IEBSEN et al., Appellees.

No. 45692.

OCTOBER 14, 1941.

Rudolph & Rudolph and Dalton & Dalton, for appellants.

E. S. Holton and Roscoe Jones, for appellees.

GARFIELD, J.—On March 1, 1939, defendants-appellees, who were husband and wife, were the owners of a farm of 120 acres in Cass county which they had occupied as their home for more than twenty years. On that date they executed two notes to Wm. Guttenfelder for $3,300 and $6,200, respectively, due in ten years, bearing 3 percent interest, together with a mortgage upon the farm to secure the notes. The payee of the notes indorsed the note for $3,300 to G. C. Dalton, one of the two plaintiffs-appellants, and R. D. Rudolph, both attorneys practicing in Atlantic. Upon the death of Wm. Guttenfelder, the note for $6,200 became the property of Ray Guttenfelder, the remaining plaintiff-appellant, and his brother Walter.

In March, 1940, appellees failed to pay the interest on the notes. The holders thereof threatened to declare the entire debt due and start suit to foreclose the mortgage. After some negotiations, the parties met in the law office of Mr. Rudolph who prepared a warranty deed to the farm, which appellees executed. Ray Guttenfelder and G. C. Dalton, the two plaintiffs-appellants, were named as grantees. Appellants base their claim to possession of the farm in question upon this deed.

Together with the deed, there was prepared by Mr. Rudolph a written contract between appellees and the four holders of the two mortgage notes (the two appellants and Walter Guttenfelder and R. D. Rudolph). The contract, which was signed, provides that the deed was to be placed in escrow in an Atlantic bank; that the Iebsens (appellees) "shall have until March 1st, 1941 to refinance the said mortgage and notes and pay the same off * * *. That in the event they are unable to do so, the said * * * [bank] is to deliver over the deed aforesaid to Second Parties after March 1, 1941, the same to become their property. * * * That if First Parties [appellees] redeem said mortgage indebtedness on or before March 1, 1941, they shall be entitled to receive on the total amount due under said mortgage * * * a discount of $1,000.00 and the interest of one year in the amount of $285.00." The contract further provides that foreclosure proceedings would not be instituted;

that if redemption were made, the deed should be returned to appellees; that if no redemption were made and the deed should be delivered to Second Parties, appellees should thereupon be released from further liability on the notes and mortgage.

The deed and contract were placed in escrow with the bank. Appellees did not redeem and on March 6, 1941, the bank delivered the deed to appellants, who thereupon took out insurance on the farm buildings and placed the deed of record on March 17, 1941. Five days later, this action was started to recover possession from appellees.

The defense was that the deed was merely additional security and not an absolute conveyance which entitled plaintiffs to possession. Another defense was interposed which need not be considered. By agreement, the case was transferred to equity for trial. The learned trial court dismissed the action on the theory that a purchase and sale of the premises was not the real intent of the parties and that the deed did not extinguish appellees' equity of redemption. We are content with the holding of the trial court.

The law governing a case of this kind is comparatively well settled. Let it be remembered that at the time of the execution of this deed and escrow agreement, the relation of mortgagor and mortgagee existed between these parties. The right to redeem is universally recognized as a favorite equity. 36 Am. Jur. 783, section 181. In 19 R. C. L. 387, 389, sections 160, 162, we find the following:

"But any contract by which the mortgagor sells or releases his interest to the mortgagee is viewed suspiciously and carefully scrutinized in a court of equity. * * * However, it is the general rule that a conveyance of the mortgaged premises by the mortgagor to the mortgagee operates as a bar to the equity of redemption only when it clearly and unequivocally appears that both parties so intended that it should; otherwise, it will be regarded as a mere change in the form of the security operative as a mortgage. * * * In this view the burden of proving the conveyance to have been really absolute must be discharged by the parties who affirm its absolute quality."

An extended annotation on the effect of a deed from mort-

gagor to mortgagee as extinguishing the equity of redemption appears in 129 A. L. R. 1435, 1438. The following quotations are supported by numerous citations:

"The attitude of equity courts toward the extinguishment of the equity of redemption by a conveyance from mortgagor to mortgagee is one of suspicion [page 1438]. * * * According to one view, the presumption is that the relation of mortgagor and mortgagee continues notwithstanding the conveyance to the mortgagee [page 1446]. * * * The majority rule is that the burden of proving the fairness of a transaction of conveyance from mortgagor to mortgagee is on the mortgagee [page 1451]. * * * If the true purpose of the parties in entering into the transaction of conveyance to the mortgagee was not one of sale, the deed will not terminate the mortgagor-mortgagee relation [page 1460]. * * * A conveyance from mortgagor to mortgagee will not extinguish the equity of redemption in case of doubt as to whether or not a sale was intended [page 1467]."

Among the authorities cited in support of each of the above rules is at least one Iowa case. A leading case involving the questions before us is Fort v. Colby, 165 Iowa 95, 144 N. W. 393, where substantially the above rules are forcefully stated. This court there says (page 127 of 165 Iowa, page 405 of 144 N. W.):

"* * * a relinquishment or surrender to the mortgagee of the mortgagor's equity will be sustained only upon clear and satisfactory showing that the agreement * * * is perfectly fair and free from any element of advantage or oppression."

In Morton Farm. Mut. Ins. Assn. v. Farquhar, 200 Iowa 1206, 1211, 206 N. W. 123, 126, this court says:

"We have, then, a case where the mortgagor of real estate executes to his mortgagee a deed of the real estate for a nominal consideration only. * * * It is well settled that in such a case the deed will be presumed to be a continuation of the security, and the right of redemption thereon is presumed to continue."

An annotation on the effect of placing a deed in escrow to be delivered upon failure to pay the debt due the mortgagee-grantee is to be found in 65 A. L. R. 120.

1084

To summarize the law applicable to this case, such a transaction as appellants seek to enforce will be closely scrutinized and upheld only where it is perfectly fair, based upon adequate consideration and it clearly and unmistakably appears that an absolute sale and not a transfer for security only was within the contemplation of the parties. In arriving at the intention of the contracting parties, courts look behind the form of the instruments to the real relationship between the parties. Fort v. Colby, 165 Iowa 95, 121, 144 N. W. 393. The instruments must be read in the light of the surrounding circumstances and the practical construction which the parties themselves placed thereon. McGuire v. Halloran, 182 Iowa 209, 219, 160 N. W. 363; McRobert v. Bridget, 168 Iowa 28, 32, 149 N. W. 906; Keeline v. Clark, 132 Iowa 360, 364, 106 N. W. 257.

It is to be observed that appellants and appellees did not deal on equal terms. Appellants were the creditors, appellees the debtors. Appellants were fully aware of their legal rights. Appellees were ignorant of their rights and acted without advice or counsel. Appellees were apparently of limited education, lacking experience in such matters. Appellants prepared the instruments. This inequality, though in itself insufficient to impeach the transaction, is a circumstance.

Authorities are numerous to the effect that an important inquiry in a controversy such as this is the value of the property compared to the mortgage debt. Harris v. Barnes City Sav. Bank, 194 Iowa 492, 497, 188 N. W. 862; Holman v. Mason City Auto Co., 186 Iowa 704, 710, 171 N. W. 12; Keeline v. Clark, 132 Iowa 360, 367, 106 N. W. 257. We think the fair inference from the testimony is that there was a substantial equity in the farm. The original mortgage had been negotiated only about one year previous, for ten years at three percent. It appears without dispute that during the negotiations leading up to the making of the deed, appellant Rudolph assured appellees they would be able to obtain a new loan of sufficient size to take up the existing indebtedness and that he would assist in procuring such loan. Obviously, such an amount could not be borrowed on the security of this farm unless there was a considerable margin of value over and above the amount of the Guttenfelder mortgage.

Another circumstance pointing to the conclusion reached by

the trial court is that appellants did not at any time cancel or surrender the notes or the mortgage. Indeed, appellants did not even produce either of the notes or the mortgage upon the trial. Mr. Dalton, at the conclusion of all the evidence, did orally state that he tendered the mortgage but admitted that he did not know its whereabouts. He testified that he did not know the whereabouts of the $3,300 note owned by him and Mr. Rudolph. The mortgage had never been released at the time of trial. If an absolute transfer had been contemplated, the evidences of indebtedness should have been canceled and surrendered to appellees. That this circumstance is entitled to weight, see Holman v. Mason City Auto Co., 186 Iowa 704, 707, 171 N. W. 12; Annotation, 129 A. L. R. 1435, at page 1495, and cases cited.

It is significant that the escrow agreement prepared by appellants themselves is wholly silent on the question of transfer of possession of the farm. Also nothing was said by any of the parties during the negotiations regarding the surrender of possession. Appellees remained in occupancy of their home without any intimation from appellants that they would be required to vacate. If this had been an absolute conveyance, appellants would be apt to have provided in express terms for the transfer of possession. That the continued possession of appellees is a circumstance inconsistent with appellants' claim of an absolute conveyance, see Morton Farm. Mut. Ins. Assn. v. Farquhar, 200 Iowa 1206, 1211, 206 N. W. 123.

There is credible testimony that during the negotiations preceding the signing of the instruments appellants told appellees they would foreclose the mortgage if they were not given a deed *for extra security* and that further time would be extended so appellees could secure money to pay off the indebtedness. The deed was given following this request.

It seems to us that the instruments themselves are entirely consistent with appellees' contention. Kinkead v. Peet, 137 Iowa 692, 114 N. W. 616, involves a deed and accompanying written contract quite similar to the deed and escrow agreement now before us. The transaction was held to be a mortgage. We quote from the opinion (page 695 of 137 Iowa, page 617 of 114 N. W.):

"Even upon the face of the papers themselves, we should be inclined to hold that a mortgage was created, for the reason

that the debts were still regarded as subsisting, and plaintiff was to pay this indebtedness and not some other or fixed amount in order to secure a reconveyance of the property to him.''

In arriving at our decision we give some weight to the conclusion of the learned trial court who saw and heard the witnesses. Perhaps none of the above matters, standing alone, is sufficient to justify the conclusion reached, but upon the whole record an affirmance is warranted.

Appellants place strong reliance upon testimony that the deed and escrow agreement were read over to appellees, who said they understood their terms. It is also argued that the parties believed appellees' right of redemption would be cut off upon default on March 1, 1941. It may be that appellees, as well as appellants, supposed or believed the transaction would be effective to cut off appellees' right of redemption. But this is not controlling. The important inquiry is whether the deed was intended for security; if so, the settled policy of the law accorded appellees the right to redeem, whether they knew it or not. Stated in another way, the important question is, what rights does the law give these parties under the arrangement made, not what they conceived their rights to be. Likewise, if the transfer was for security, the stipulation in the escrow agreement was ineffectual to cut off the right of redemption. McGuire v. Halloran, 182 Iowa 209, 219, 160 N. W. 363; Tansil v. McCumber, 201 Iowa 20, 32, 206 N. W. 680; Holden Land & L. S. Co. v. Interstate Trading Co., 87 Kan. 221, 123 P. 733, L. R. A. 1915B, 492, 494; Annotation, 129 A. L. R. 1435, at page 1461, and cases cited.

The judgment is affirmed.—Affirmed.

All JUSTICES concur.