**NASH FINCH COMPANY, Plaintiff,**

v.

**COREY DEVELOPMENT, LTD. and Crystal/Taft L.L.C., Defendants.**

No. C01–3053–PAZ.

United States District Court,
N.D. Iowa,
Central Division.

Aug. 28, 2002.

Lynn W. Hartman, Mark A. Roberts, Simmons Perrine Albright Ellwood, Cedar Rapids, IA, for Plaintiff.

M. Wayne Oltrogge, Clear Lake, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT**

ZOSS, United States Magistrate Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* .................................................883

II. *STATEMENT OF FACTS* ...........................................883

III. *LEGAL ANALYSIS* ..............................................885
  A. *Standards for Summary Judgment* ...................................885
  B. *Nash Finch's Claim for Judgment on the Promissory Note* ...............886
    1. *Statutory framework* ..........................................887
    2. *Iowa case law* ...............................................888
    3. *Certification of question to Iowa Supreme Court* .....................893

35. Doc. No. 142.

*IV. CONCLUSION* .................................................................895

## I. INTRODUCTION

This case is before the court on the motion (Doc. No. 13) of the plaintiff Nash Finch Company ("Nash Finch") for partial summary judgment on Count I of the Complaint (Doc. No. 1, pp. 4–5).

This case was commenced on June 18, 2001, when Nash Finch filed a three-count Complaint against the defendants Corey Development, Ltd. ("Corey") and Crystal/Taft L.L.C. ("Crystal/Taft"). In the Complaint, Nash Finch alleges the following causes of action:

Count I: Against Corey for nonpayment under a forbearance agreement;

Count II: Against Corey for waste;

Count III: Against Crystal/Taft for waste.

In Count I, Nash Finch prays for judgment against Corey for the amount due and owing on a promissory note, including interest, attorney fees and costs, after application of the net proceeds from the sale of certain real property. In Count II, Nash Finch prays for damages to the property caused by Corey's waste, and in Count III, Nash Finch prays for damages to the property caused by Crystal/Taft's waste. Diversity of citizenship jurisdiction is alleged under 28 U.S.C. § 1332(a).

On July 16, 2001, Corey and Crystal/Taft answered the Complaint (Doc. No. 4). They admit most of Nash Finch's allegations but deny responsibility for any damages to the property (¶ 18), deny Nash Finch has been damaged at all (¶ 22), and generally deny any liability on the three counts.

On August 22, 2001, the parties consented to jurisdiction over this case by a United States Magistrate Judge (Doc. No. 7), and on the same date, the Honorable Mark W. Bennett signed an order transferring the case to Magistrate Judge Paul A. Zoss (Docket No. 8).

On May 28, 2002, Nash Finch filed its motion for partial summary judgment (Doc. No. 13), supported by a brief (Doc. No. 14) and a statement of undisputed facts (Doc. No. 15). In the motion, Nash Finch seeks a determination that Corey is liable for the remaining balance on a promissory note, mortgage, and forbearance agreement. On June 25, 2002, Corey filed a resistance to the motion, a supporting brief, and a statement of additional undisputed facts.[1] (Doc. Nos. 18, 19, & 20) On April 13, 2000, Corey filed a reply brief. (Doc. No. 72) The court now will address the issues raised by Nash Finch's motion for partial summary judgment and Corey's resistance to the motion.

## II. STATEMENT OF FACTS

Nash Finch is a Delaware corporation, with its principal place of business in Minnesota. Corey is an Iowa corporation, with its principal place of business in Mason City, Iowa. Crystal/Taft is a limited liability company organized and existing under the laws of the State of Iowa, with its principal place of business in Mason City, Iowa.

This lawsuit concerns a promissory note in the amount of $875,000, executed on July 18, 1997, by Corey, and payable to Nash Finch. (Doc. No. 1, Ex. A) The promissory note bore an interest rate of

---

1. Because neither party responded to the other's statement of undisputed facts, the court will treat these statements as true and undisputed. LR 56.1(b) & (d) ("The failure to [respond] [reply] to an individual statement of material fact constitutes an admission of that fact.")

8% per annum. Under the terms of the note, Corey was required to make monthly interest payments of $5,833.33, with all outstanding principal and accrued interest due on July 17, 1998. To secure the note, Corey gave Nash Finch a mortgage, assignment of rents, and security agreement. (Doc, No. 1, Ex. B) The mortgage covered certain described commercial real estate in Mason City, Cerro Gordo County, Iowa. Under the terms of the mortgage, Corey agreed to not sell, convey, or otherwise transfer any part of the mortgaged property without the prior written consent of Nash Finch. (*Id.*, ¶5(d)) The mortgage also provided that any failure of Corey to make a payment when due and any default by Corey in the performance of a covenant or agreement in the note or mortgage would be events of default under the mortgage and would result in acceleration of the note, with the entire balance of the note immediately due and payable.

On February 16, 1999, Corey transferred the mortgaged property to Crystal/Taft without the prior written consent of Nash Finch. Corey also defaulted on its payment obligations under the note.

In March 2000, Corey, Crystal/Taft and Nash Finch entered into a forbearance agreement. Under the terms of this agreement, Nash Finch agreed to forbear from exercising its rights under the note and mortgage until September 30, 2000, in exchange for a deed in lieu of foreclosure from Corey and Crystal/Taft to Nash Finch "in partial satisfaction" of the note from Corey to Nash Finch. (Doc. No. 1, ¶3 & Ex. C) The agreement provided that Nash Finch reserved all of its other rights under the note and mortgage "in the event any of the terms and conditions of [the

forbearance agreement] are not fully satisfied." The parties stipulated there was an outstanding principal balance on the note of $862,500, and accrued interest on the note in the amount of $112,891.66, and these amounts were validly due and owing to Nash Finch.

Pursuant to the terms of the forbearance agreement, Corey and Crystal/Taft gave Nash Finch a warranty deed to the property, which Nash Finch held in escrow.[2] The parties agreed that if Corey did not pay the note in full by September 30, 2000, Nash Finch "shall immediately file the Deed in Lieu of Foreclosure or the Nonjudicial Documents, whichever applicable, and take other action as set out in this Agreement, without any further notice of any kind."[3] The parties further agreed that if Corey "pays the amount due and owing under the Note prior to the end of the Forbearance Period, plus accrued interest and any other costs advanced by Nash–Finch in accordance with the terms of the Mortgage, Nash–Finch agrees to return the Deed in Lieu of Foreclosure to [Corey]." Corey and Crystal/Taft warranted and represented that "the Deed in Lieu of Foreclosure is an absolute conveyance of [Corey's] and [Crystal/Taft's] rights, title and interest in and to the Mortgaged Property," and "conveys, transfers and assigns [Corey's] and [Crystal/Taft's] rights of possession, leases and rentals and equity of redemption in and to the Mortgaged Property."

The forbearance agreement also provided, "This Agreement and the Deed in Lieu of Foreclosure shall not restrict the right of Nash–Finch to institute foreclosure proceedings at the end of the Forbearance

**2.** The warrant deed contains the statement, "This deed is in lieu of foreclosure of [the] mortgage." Doc. No. 1, Ex. B to Exhibit C.

**3.** Attached to the forbearance agreement was a warranty deed (the deed in lieu of foreclosure) and paperwork for an "alternative nonjudicial voluntary foreclosure" pursuant to IOWA CODE § 654.18.

Period," and "this Agreement shall not preclude any other or further exercise of any right, power or privilege under the Note or any Mortgage, except as expressly provided herein."

Corey did not make full payment on the note by September 30, 2000, and on October 5, 2000, Nash Finch filed the warranty deed with the Cerro Gordo County Recorder. On October 5, 2000, the principal and interest balance on the note was $1,011,617.29. According to Nash Finch's appraiser, the property was worth $529,000 as of October 25, 2000. Nash Finch's appraiser also opined that the property would have been worth $575,000 as of October 25, 2000, if certain improvements had not been removed by the defendants.

Nash Finch asks for summary judgment in the full amount of the outstanding principal and interest due under the note after crediting the appraised value of the mortgaged property received by Nash Finch under the warranty deed. Corey responds by arguing that when Nash Finch filed the warranty deed, it elected to proceed with an "alternative nonjudicial voluntary foreclosure" under § 658.18, and thereby, under the terms of that code section, waived any right to a deficiency. (Doc. No. 18, ¶¶ 2–5) Alternatively, Corey argues it would be inequitable and a violation of Iowa law to permit Nash Finch to file the deed in lieu and also to collect a deficiency. Corey also argues there are material issues of fact concerning valuation of the property at the time Nash Finch took possession. (*Id.*, ¶ 6)

### III.  LEGAL ANALYSIS

#### A.  Standards for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides that either party to a lawsuit may move for summary judgment without the need for supporting affidavits. Fed.R.Civ.P. 56(a) & (b). Rule 56 further states that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). "A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, ... and give [the nonmoving party] the benefit of all reasonable inferences that can be drawn from the facts." *Lockhart v. Cedar Rapids Comm. Sch. Dist.*, 963 F.Supp. 805, 814 (N.D.Iowa 1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The party seeking summary judgment must " 'inform[ ] the district court of the basis for [the] motion and identify[ ] those portions of the record which show lack of a genuine issue.' " *Lockhart*, 963 F.Supp. at 814 (quoting *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is one with a real basis in the record. *Lockhart*, 963 F.Supp. at 814 n. 3 (citing *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56). Once the moving party has met its initial burden under Rule 56 of showing there is no genuine issue of material fact, the nonmoving party, "by affidavits or as otherwise provided in [Rule 56],[4] must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e); *Lockhart*,

---

4.  *i.e.*, by "affidavits ... supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Fed.R.Civ.P. 56(e).

963 F.Supp. at 814 (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356).

Addressing the quantum of proof necessary to successfully oppose a motion for summary judgment, the United States Supreme Court has explained the nonmoving party must produce sufficient evidence to permit " 'a reasonable jury [to] return a verdict for the nonmoving party.' " *Lockhart*, 963 F.Supp. at 815 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Furthermore, the Court has held the trial court must dispose of claims unsupported by fact and determine whether a genuine issue exists for trial, rather than "weigh the evidence and determine the truth of the matter." *Lockhart*, 963 F.Supp. at 815 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56).

The Eighth Circuit recognizes "summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (*citing* Fed.R.Civ.P. 56(c)). The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

Thus, the trial court must assess whether a nonmovant's response would be sufficient to carry the burden of proof at trial. *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). If the nonmoving party fails to make a sufficient showing of an essential element of a claim

with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Woodsmith Pub. Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990). However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Burk v. Beene*, 948 F.2d 489, 492 (8th Cir.1991); *Woodsmith*, 904 F.2d at 1247.

The court now will apply these standards to Nash Finch's motion for partial summary judgment.

### B.  Nash Finch's Claim for Judgment on the Promissory Note

Nash Finch argues it is entitled to judgment on Count I of the complaint in the amount of the difference between the appraised value of the property transferred to Nash Finch by the deed in lieu of foreclosure and the total of the amount due to Nash Finch on the promissory note. Corey responds by arguing that in recording the deed in lieu of foreclosure, Nash Finch took title to the property in lieu of foreclosure and waived its right to any deficiency. Corey further argues Nash Finch is attempting to deny Corey its redemption rights in violation of the principles of equity, Iowa law, and public policy, and the deed in lieu of foreclosure should be construed as an election by Nash Finch to pursue a nonjudicial voluntary foreclosure under Iowa Code Section 654.18. Nash Finch replies that when it filed the warranty deed in lieu of foreclosure, it was not pursuing a nonjudicial voluntary foreclosure under Section 654.18, but was simply enforcing its rights under the forbearance agreement. According to Nash Finch, Corey's redemption argument is a

"red herring" because the defendants have never sought to redeem the property.[5]

### 1. Statutory Framework

Although Iowa case law sets out a number of guiding principles for examining the issues in this case, the court can find no case directly on point. Before summarizing the case law, the court will discuss the statutory framework for foreclosures in the State of Iowa.

Foreclosure of real estate mortgages in Iowa is governed by Chapter 654 of the Code of Iowa. Section 654.1 of the Iowa Code provides: "Except as provided in section 654.18, a deed of trust or mortgage of real estate shall not be foreclosed in any other manner than by action in court by equitable proceedings." Section 654.18 sets out an "alternative nonjudicial voluntary foreclosure procedure" under which the mortgagor conveys to the mortgagee all interest in the mortgaged property, and the mortgagee accepts the conveyance and waives any right to a deficiency.[6] Corey argues Nash Finch had only two choices—

to proceed with a foreclosure proceeding under Chapter 654 of the Code of Iowa, or to file a deed in lieu under section 654.18. Corey argues Nash Finch elected to proceed under section 654.18 by filing the deed in lieu of foreclosure, and thereby waived any right to pursue a deficiency. Nash Finch responds that when it filed the deed in lieu, it was not proceeding under section 654.18, but was enforcing its rights under the forbearance agreement, and under the express terms of agreement, it reserved its right to pursue a deficiency.

The statutory procedure for voluntary, nonjudicial foreclosure under section 654.18 requires, among other things, that the mortgagor and mortgagee file a "a jointly executed document with the county recorder in the county where the real property is located stating that the mortgagor and mortgagee have elected to follow the alternative voluntary foreclosure procedures pursuant to this section." Id., section d. Nash Finch argues the forbearance agreement provided it with the option of filing the deed in lieu of foreclosure or

---

**5.** The forbearance agreement provides, in paragraph 9, that conveyance of the property to Nash Finch by Corey and Crystal/Taft is "intended and understood to be an absolute conveyance and an unconditional sale, with full extinguishment of [Corey's] and [Crystal/Taft's] equity of redemption...."

**6.** Iowa Code Section 654.18 provides, in pertinent part:

1. Upon the mutual written agreement of the mortgagor and mortgagee, a real estate mortgage may be foreclosed pursuant to this section by doing all of the following:

a. The mortgagor shall convey to the mortgagee all interest in the real property subject to the mortgage.

b. The mortgagee shall accept the mortgagor's conveyance and waive any rights to a deficiency or other claim against the mortgagor arising from the mortgage.

c. The mortgagee shall have immediate access to the real property for the purposes of maintaining and protecting the property.

d. The mortgagor and mortgagee shall file a jointly executed document with the county recorder in the county where the real property is located stating that the mortgagor and mortgagee have elected to follow the alternative voluntary foreclosure procedures pursuant to this section.

e. The mortgagee shall send by certified mail a notice of the election to all junior lienholders as of the date of the conveyance under paragraph "a," stating that the junior lienholders have thirty days from the date of mailing to exercise any rights of redemption. The notice may also be given in the manner prescribed in section 656.3 in which case the junior lienholders have thirty days from the completion of publication to exercise the rights of redemption.

f. At the time the mortgagor signs the written agreement pursuant to this subsection, the mortgagee shall furnish the mortgagor a completed form in duplicate, captioned "Disclosure and Notice of Cancellation." ...

pursuing a nonjudicial voluntary foreclosure under Section 654.18. According to Nash Finch, it filed the deed in lieu of foreclosure, and specifically elected not to pursue a nonjudicial voluntary foreclosure under section 654.18. The court agrees. The specific procedures for an alternative nonjudicial voluntary foreclosure were not followed in this case because Nash Finch never intended to invoke the statutory provision. Instead, Nash Finch simply filed the deed in lieu. Accordingly, the court will not analyze this case under section 654.18. This, of course, does not answer the questions the court must decide to rule on the pending motion; i.e., whether filing the deed in lieu vested clear title to the property in Nash Finch, and whether Nash Finch should be permitted to pursue a deficiency under these circumstances.

Chapter 654 contains additional foreclosure provisions. Section 654.2 of the Code of Iowa provides that deeds of trust of real property are to be foreclosed like mortgages. Section 654.5 provides that when a mortgage is foreclosed, the court will render judgment for the entire amount due and direct that the mortgaged property be sold to satisfy the judgment, with interest and costs. The property then will be sold under a special execution, subject to redemption unless the plaintiff elects to foreclose without redemption under section 654.20. Section 654.20 and the sections that follow it provide that nonagricultural land may be foreclosed without redemption if certain procedures are followed. These procedures include the waiver of any deficiency judgment. See IOWA CODE § 654.26. If, after a sale under section 654.5, the mortgaged property does not sell for enough to satisfy the execution, a general

execution may be issued against the mortgagor. IOWA CODE § 654.6.

Again, none of these statutory provisions answers the questions posed in the present case. The court must decide whether, under Iowa law and the principles of equity, and in the circumstances of this case, Nash Finch should be permitted to file a deed in lieu of foreclosure, take possession of and clear title to the mortgaged real estate, and then pursue a deficiency on the mortgage.

### 2. Iowa case law

The following is a summary of the Iowa case law cited by the parties to the court. On balance, these authorities support the proposition that the deed in lieu of foreclosure given by Corey and Crystal/Taft to Nash Finch pursuant to the forbearance agreement was nothing more than additional security for the payment of Corey's debt to Nash Finch. However, these authorities are not really instructive on the issue the court must decide to rule on the motion for summary judgment; i.e., whether Nash Finch is entitled to pursue its claim for a deficiency judgment even though it filed the deed in lieu.[7]

In Trucks v. Lindsey, 18 Iowa 504, 504 (1865), the Iowa Supreme Court established the basic principle that "a conveyance absolute on its face may, by proper evidence, be shown to be but a mortgage, and parol testimony is admissible and competent to establish such fact." Accord Greene v. Bride & Son Construction Co., 252 Iowa 220, 227, 106 N.W.2d 603, 607–08 (1960) (discussed infra); Steckelberg v.

---

7. Arguably, the court could simply invalidate the deed in lieu and order that for Nash Finch to obtain legal title to the real estate, it must either institute proceedings to foreclose the mortgage or proceed under section 654.18. However, none of the parties has requested such relief; they all have confined their arguments to the question of whether or not Nash Finch can pursue a claim for a deficiency judgment. The court, therefore, will answer only that question.

*Randolph,* 404 N.W.2d 144, 148 (Iowa 1987) (also discussed *infra*).

In *Guttenfelder v. Iebsen,* 230 Iowa 1080, 300 N.W. 299 (1941), the mortgagors, who were in default under a note and mortgage, gave a warranty deed to the mortgagees together with an escrow agreement. The terms of the escrow agreement were that the mortgagors were to pay off the note and mortgage by an agreed deadline or the mortgagees could file the deed, which would release the mortgagors from further liability under the note and mortgage. The mortgagors did not make the agreed payments, and the mortgagees filed the deed. The mortgagees brought an action to obtain possession of the property. The court held that "a purchase and sale of the premises was not the real intent of the parties" and "the deed did not extinguish [the mortgagors'] equity of redemption." *Id.,* 300 N.W. at 301. The court noted that any contract by which a mortgagor sells or releases an interest to a mortgagee is viewed suspiciously, and is to be carefully scrutinized in a court of equity. *Id.* Unless "it clearly and unmistakably appears" that an absolute sale and not a transfer for security only was within the contemplation of the parties, such a transaction should be viewed merely as "a change in the form of security operative as a mortgage." *Id.* (internal citations omitted) To be enforceable as a conveyance, such a transaction must be "perfectly fair and free from any element of advantage or oppression."[8] *Id.* (internal citations omitted). The court concluded:

> It may be that [the mortgagors], as well as [the mortgagees], supposed or believed the transaction would be effective to cut off [the mortgagors'] right of redemption. But this is not controlling.

The important inquiry is whether the deed was intended for security; if so, the settled policy of the law accorded [the mortgagors] the right to redeem, whether they knew it or not. *Id.,* 300 N.W. at 303.

In *Reusch v. Shafer,* 241 Iowa 536, 546, 41 N.W.2d 651, 656 (1950), the Iowa Supreme Court cited a line of authority for the proposition that "a warranty deed ... may be shown by parol testimony to have been intended to be in fact only a mortgage and given only for security, ... but ... the burden to so show is upon the one, claiming that to be a fact, to establish it by clear, satisfactory, and convincing evidence." The court later explained that "a deed absolute on its face will not be declared a mortgage, except upon proof that is clear and satisfactory." *Id.* (internal quotation marks and citations omitted).

In *Swartz v. Stone,* 243 Iowa 128, 49 N.W.2d 475 (1951), one of the defendants, Whisler, loaned money to Latta, secured by second and third mortgages on Latta's farm land. A first mortgage was held by an insurance company. When Latta defaulted on his payments to Whisler, Latta and Whisler entered into an agreement whereby Latta conveyed his interest in the property to Whisler, and Whisler agreed to sell the property back to Latta on installment payments totaling the full amount Latta owed on the Whisler debt and the first mortgage debt. The property was worth substantially more than the amounts secured by all the mortgages. Latta continued in possession of the land.

Latta defaulted on the payment terms of the contract, and Whisler served notice of forfeiture requiring the delinquencies to be paid by a date certain. Latta went to

8. The court noted the parties had not dealt on equal terms. The mortgagees had prepared the documents. The mortgagors were uneducated and ignorant of their rights, and they acted without the advice of counsel. Also, under the terms of the transaction, the mortgagors would have lost substantial equity in the real estate.

Stone, who agreed to help Latta try to keep his farm. Stone agreed to pay the delinquency to Whisler on Latta's behalf. Whisler conveyed the property to Stone, allowing Stone to take over the deal subject to the first mortgage balance. Eventually, Stone learned Latta had rented the farm out, and Stone instituted a forcible entry and detainer action against Latta. In the meantime, Latta contracted to sell the farm to Swartz and executed a quitclaim deed to Swartz. Swartz filed suit to quiet his title in the land, to have the deeds to Whisler and Stone declared to be mortgages, and to adjudicate the amounts to be paid to Whisler and Stone to redeem the land from Latta's indebtedness to them.

The trial court held Latta had forfeited his interest in the land by failing to perform the conditions of the Whisler notice of forfeiture. Therefore, Latta had no interest in the property when he executed the quitclaim deed to Stone, and Stone acquired no interest in the land. *Id.*, 243 Iowa at 132, 49 N.W.2d at 477. The Iowa Supreme Court reversed, holding:

> The record shows without substantial dispute the conveyance by Latta to Whisler and the subsequent conveyance by Whisler and wife to Stone were merely transactions to secure payment of the indebtedness of Latta and did not divest Latta of the equitable title to the land. It is the rule that where the mortgagor deeds the property to the mortgagee[,] the deed is presumed to be but a continuation of the security and the right of redemption is presumed to continue. This right is a favorite of equity and the transfer will operate as a bar only when it clearly appears both parties intended an absolute sale. In determining such intention[,] courts look behind the form of the instruments to the real relationship between the parties. *Davis v. Wilson*, 237 Iowa 494, 498, 21 N.W.2d 553 [1946]; *Guttenfelder*

*v. Iebsen*, 230 Iowa 1080, 300 N.W. 299 [1941]; *Koob v. Zoller*, 231 Iowa 1106, 1110, 1111, 3 N.W.2d 130, 132, 133 [1942]; *Fort v. Colby*, 165 Iowa 95, 120 et seq., 144 N.W. 393 [1913].

*Swartz*, 243 Iowa at 132, 49 N.W.2d at 477.

In his testimony, Whisler "frankly acknowledged the deed to him and contract back to Latta was a security transaction for the money Latta owed him.... The rights of redemption under such a transaction are those fixed by law, not what the parties may conceive them to be." *Id.*, 49 N.W.2d at 478 (citations omitted).

In *Greene v. Bride & Son Construction Co.*, 252 Iowa 220, 106 N.W.2d 603 (1960), a mortgagee, Greene, foreclosed a mortgage on some commercial property and sold the property for the amount of the mortgage and interest. A few days before the redemption period was to expire, Greene told the mortgagor, Bride, that Greene would redeem the property from the foreclosure sale if Bride would give him a deed to secure Bride's debt to Greene. Bride agreed, on the condition that he could buy the property back by paying the debt. The parties entered into a contract to implement this agreement. Bride made the monthly payments on the debt, but failed to pay the final balance due under the contract. Greene served Bride with notice of forfeiture and cancellation of the real estate contract. A month later, Greene served Bride with notice to quit, and subsequently filed a forcible entry and detainer action. Bride appealed from the trial court's decision that the transactions between the parties constituted a sale. On appeal, Bride sought to have his quitclaim deed, an assignment of certificate of redemption, a marshal's deed, and the real estate contract, declared to be a mortgage.

The Iowa Supreme Court agreed with Bride and reversed the trial court, holding

the deed was, in effect, a mortgage. *Id.,* 252 Iowa at 227, 106 N.W.2d at 608. The court listed several "important principles" to be applied in deciding similar cases, as follows.[9] First, the mortgagor has the burden of proving that the consideration for the deed was an existing indebtedness, and the indebtedness was not extinguished by the conveyance. Second, if the transaction started out as a loan, it will be treated as a loan to the end unless the parties later bargained for the property independently of the loan. Third, the statements made while the transaction was being negotiated are important to determine whether or not the transaction was a mortgage. Fourth, for the transaction to be a mortgage, there must be a preexisting obligation at the time of the execution of the contract. Fifth, utterances and dealings by the parties after the conveyance can throw light upon whether the transaction was a loan or purchase. Sixth, if the mortgagor is financially embarrassed and urgently in need of help, this fact favors the treatment of a deed as a mortgage. Seventh, inadequacy of consideration constitutes a strong circumstance that a deed was intended as a mortgage. *Id.,* 252 Iowa at 224–26, 106 N.W.2d at 606–07.

The court noted:

"However, it is the rule that where an absolute deed is accompanied by a contract to reconvey on specified conditions, and, under the evidence, a doubt exists as to whether the conveyance was intended to be absolute or as security for a debt, the contract will be construed to be a mortgage rather than a privilege to repurchase or a conditional sale."

*Greene,* 252 Iowa at 226–27, 106 N.W.2d at 607 (quoting *Brown v. Hermance,* 233 Iowa 510, 514–15, 10 N.W.2d 66, 68 (1943)). The court observed it had held on several occasions that one who claims a deed is

actually a mortgage has the burden of establishing that claim "by clear, satisfactory and convincing" or "clear and satisfactory" evidence. *Greene,* 252 Iowa at 227, 106 N.W.2d at 607–08 (citing, *inter alia, Brown, supra; Reusch, supra* ). Finding Bride had met his burden, the court held the deeds, assignment of redemption certificate and real estate contract were taken by Greene as security and therefore constituted a mortgage. *Id.,* 252 Iowa at 228, 106 N.W.2d at 608.

In *Koch v. Wasson,* 161 N.W.2d 173 (Iowa 1968), the Iowa Supreme Court held, " 'It is a ... well-established rule that, where a conveyance absolute upon its face is accompanied by a contract or agreement, by which the grantee undertakes to reconvey the land to the grantor on specified conditions, and the terms of such agreement or the circumstances under which it was made renders it doubtful whether a mortgage or conditional sale was intended, the courts will hold it a mortgage.' " *Koch,* 161 N.W.2d at 177 (quoting *Fort v. Colby,* 165 Iowa 95, 144 N.W. 393, 395 (1913)).

In *Koch,* the mortgagor had substantial equity in the farm he deeded to the mortgagee. The court noted, "Inadequacy of consideration is a strong circumstance[ ] tending to show the transaction was intended to be a mortgage." *Id.,* 161 N.W.2d at 178. Although not conclusive, retention of possession by the mortgagor is consistent with a creditor-debtor relationship and inconsistent with an absolute conveyance. *Id.* The court held "each case must be considered on the totality of its own facts," and the court will "look behind the form of the instrument to the real relationship between the parties." *Id.*

---

**9.** Many of these same legal principles were summarized and applied in *Hemphill v. T & F*

*Land Co.,* 18 B.R. 38, 50–51 (Bankr.S.D.Ia. 1982).

In addition, the *Koch* court noted the following with regard to redemption rights:

> "It is the rule that where the mortgagor deeds the property to the mortgagee, the deed is presumed to be but a continuation of the security and the right of redemption is presumed to continue. This right is a favorite of equity and the transfer will operate as a bar only when it clearly appears both parties intended an absolute sale."

*Id.,* 161 N.W.2d at 176 (quoting *Swartz v. Stone,* 243 Iowa 128, 49 N.W.2d 475, 477 (Iowa 1951)).[10]

In *Steckelberg v. Randolph,* 404 N.W.2d 144, 148–49 (Iowa 1987), the court held that for a deed to be construed as a mortgage, the party so asserting must prove, by clear, satisfactory and convincing evidence: "(1) That the consideration for the warranty deed was an existing indebtedness, together with the amount of such indebtedness; and (2) that such indebtedness was not extinguished by the conveyance, but was kept alive." *Id.,* 404 N.W.2d at 148. The court further found, however, that "[i]f it is unclear whether a mortgage or absolute deed was intended, we resolve the doubt in favor of an equitable mortgage." *Id.,* 404 N.W.2d at 149 (citing *Greene, supra,* 252 Iowa at 226–27, 106 N.W.2d at 607); *see Fort v. Colby, supra.* The *Steckelberg* court explained, "A telltale sign that a deed, absolute on its face, amounts only to an equitable mortgage appears where the transaction of which it is a part operates to create or continue as between the parties the relation of obligor and obligee." *Steckelberg,* 404 N.W.2d at 149 (citing *Koch v. Wasson, supra,* and *Guttenfelder v. Iebsen, supra* ). Retention of possession of transferred property by the grantor is a circumstance inconsistent with a theory of absolute conveyance. *Id.*

The court now will apply these principles to the facts of the present case. Corey was indebted to Nash Finch under a note and mortgage, and went into default. Pursuant to the terms of a forbearance agreement, Corey and Crystal/Taft delivered to Nash Finch a deed in lieu of foreclosure. Thus, the transaction started out as a loan, and then a deed in lieu of foreclosure was executed and delivered to the creditor. At the time of delivery, the debtor was in default of a preexisting indebtedness, and the indebtedness was not extinguished by the delivery of the deed, but was continued under the express terms of the forbearance agreement. It does not appear from the record that the parties bargained for the sale of the property to Nash Finch independently of the loan. After the forbearance agreement was executed and the deed delivered, Corey and Crystal/Taft remained in possession of the property. Although it is not entirely clear from the record, it appears Corey was financially embarrassed and urgently in need of help at the time it entered into the forbearance agreement. Presumably, if this were not the case, then Corey would not have fallen delinquent on its payments under the loan. Under the terms of the agreement, it appears the parties contemplated that even though Nash Finch was to receive a warranty deed under the agreement, Corey and Crystal/Taft would make the payments required under the agreement and the warranty deed would never be filed. All of these facts weigh in favor of treating the transaction as an equitable mortgage rather than an actual conveyance of title by warranty deed.

**10.** *But see John Hancock Mutual Life Insurance Co. v. Bruening Farms Corp.,* 537 F.Supp. 936, 938–39 (N.D.Ia.1982), where the court observed, "Iowa law does not preclude a waiver of the statutory redemption right, *Cook v. McFarland,* 78 Iowa 528, 43 N.W. 519 (Iowa 1889), and the pertinent mortgage in this case clearly shows such a waiver."

On the other hand, there is no showing that the consideration received by Corey and Crystal/Taft under the forbearance agreement was inadequate, or that the parties to the agreement dealt from unequal positions or without the advice of counsel. Also, under the terms of the agreement, Corey and Crystal/Taft did not stand to lose substantial equity in the real estate—on the contrary, it appears they had no equity whatsoever in the property. These facts weigh against treating the transaction as an equitable mortgage rather than an actual conveyance of title.

Despite these opposing factors, the court finds, applying Iowa law, that the deed in lieu of foreclosure from Corey and Crystal/Taft to Nash Finch was, in fact, intended as further security for the payment of the note. Because it does not clearly and unmistakably appear that an absolute sale was contemplated by the parties rather than a transfer of the property for security purposes only, the authorities discussed above support the conclusion that the transaction should be treated as an equitable mortgage.

However, the question remains as to whether, under the particular circumstances of this case, the parties should be allowed, in effect, to contract around existing Iowa case law and the statutory framework for real estate foreclosures, with the following result: Nash Finch should be allowed to file the deed in lieu, obtain clear title to the property, and pursue a deficiency against Corey. As a matter of equity, it would appear that a creditor should not, under the framework of Iowa law, be able to take a deed in lieu of foreclosure and proceed to enforce a deficiency judgment

based on the difference between the total debt and the value of the foreclosed property as determined by an appraiser. On the other hand, in this case the creditor did more than simply take a deed in lieu from the debtor, file it, and then sue for a deficiency. The creditor also agreed to forbear from exercising its rights under the note and mortgage for at least six months in exchange for the right to file the deed in lieu and retain its other rights under the note and mortgage (which presumably includes the right to pursue a deficiency).[11] Arguably, by giving the debtor a "redemption period" in advance of filing the deed in lieu, the creditor has satisfied the concerns of equity, particularly when, as here, the debtor has no equity in the property.

### 3. Certification of question to Iowa Supreme Court

Because of the lack of guidance in the Iowa statutes and case law, the court has carefully considered whether to certify the issues in this case to the Iowa Supreme Court. "Whether a federal district court should certify a question of state law to the state's highest court is a matter 'committed to the discretion of the district court.'" *Leiberkneckt v. Bridgestone/Firestone, Inc.*, 980 F.Supp. 300, 309 (N.D.Iowa 1997) (quoting *Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881–82 (8th Cir.1996) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)); citing *Packett v. Stenberg*, 969 F.2d 721, 726 (8th Cir.1992) (also citing *Lehman Bros.*)).

This court's Local Rules provide:

---

**11.** The record in this case would have been more clear if the forbearance agreement had been more specific, such as, for example, if it had specifically provided that if Corey and Crystal/Taft defaulted under the terms of the agreement, Nash Finch could file the deed in lieu and then sue for a deficiency judgment in

the amount of the difference between the outstanding debt and the appraised value of the property. Although such language is not specifically set out in the forbearance agreement, the court finds this is the effect of the language of the agreement.

When a question of state law may be determinative of a cause pending in this court and it appears there may be no controlling precedent in the decisions of the appellate courts of the state, any party may file a motion to certify the question to the highest appellate court of the state. The court may, on such motion or on its own motion, certify the question to the appropriate state court. LR 83.1 (as amended Jan. 2001). The Iowa Supreme Court is authorized by statute to answer questions certified by this court where the questions "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of [Iowa]." IOWA CODE § 684A.1 (1996).

In *Leiberkneckt,* the Honorable Mark W. Bennett discussed in some detail the following factors to be considered in determining whether to certify a question to a state's highest court:

> (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Olympus Alum. Prod. v. Kehm Enters., Ltd.,* 930 F.Supp. 1295, 1309 n. 10 (N.D.Iowa 1996) (citing *Rowson v. Kawasaki Heavy Indus., Ltd.,* 866 F.Supp. 1221, 1225 & n. 5 (N.D.Iowa 1994)) (citing *L. Cohen & Co. v. Dun & Bradstreet, Inc.,* 629 F.Supp. 1419, 1423–24 (D.Conn. 1986)).

*Id.,* 980 F.Supp. at 310. The court added a seventh factor, to-wit: "whether there is any split of authority among those jurisdictions that have considered the issues presented in similar or analogous circumstances." *Id.,* 980 F.Supp. at 311.

In the present case, the first, second and fifth factors favor certification of this issue to the Iowa Supreme Court. The issues involved here are unsettled under Iowa law, this court has been unable to locate legal resources that are useful in predicting how the Iowa Supreme Court would rule on these issues, and these issues are likely to arise again in future cases. (Indeed, the court was surprised to find no reported cases addressing these issues.)

The fourth factor weighs against certification. Certainly, the Iowa Supreme Court has no lesser demands on its docket than does this court. The fifth factor also weighs somewhat against certification, in that the parties would be forced to suffer the delay and inconvenience of awaiting a response from the Iowa court.

The third factor neither supports nor disfavors certification. Although this court has a great deal of familiarity with Iowa real estate law, as discussed above, that law provides little assistance in resolving the issues in this case. The seventh factor also is not applicable under the present circumstances. The court is aware of no other jurisdiction that has considered the issues presented here in similar or analogous circumstances, particularly considering the statutory framework involved.

Considering all these factors in the context of this case, the court finds certification is appropriate. This court, sitting in diversity, is being asked to decide questions solely of state law. Based on the paucity of guidance from the Iowa statutory and case law, the court is reluctant to render a decision based on hypothesis that

could muddy the waters for future cases involving similar circumstances.

Accordingly, **the court hereby certifies to the Iowa Supreme Court the following question, to-wit:**

Under the specific facts of this case, should a creditor be permitted to take a deed in lieu of foreclosure pursuant to a forbearance agreement, file the deed upon a breach of the agreement, and then pursue a deficiency judgment against the debtor for the difference between the total debt and the value of the foreclosed property?

## IV. CONCLUSION

As the above analysis shows, significant questions of law must be answered before the court can issue a *substantive* ruling on Nash Finch's motion for partial summary judgment. At the present time, on *procedural* grounds, the court **denies Nash Finch's motion, without prejudice.** Nash Finch may reassert its motion after the Iowa Supreme Court rules on the certified question, without the necessity of the parties filing new statements of facts, briefs and appendices. Once the court has received the Iowa Supreme Court's ruling, the court will instruct the parties on the procedure to follow if Nash Finch desires to reassert its motion.

In addition, until receipt of the Iowa Supreme Court's ruling, all pending deadlines in this case are **suspended.** The court will issue new deadlines after receipt of the Iowa Supreme Court's ruling.

**IT IS SO ORDERED.**